Robert Gerald **VASQUEZ**, Appellee,

v.

**LEMARS MUTUAL INSURANCE COMPANY**, Appellant.

No. 90–1536.

Supreme Court of Iowa.

Nov. 20, 1991.

William H. Roemerman of Crawford, Sullivan, Read, Roemerman & Brady, Cedar Rapids, for appellant.

H.P. Folkers and William J. Keen of Folkers & Keen, Mason City, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, LAVORATO, and SNELL, JJ.

LAVORATO, Justice.

An insured sued his insurer under two underinsured motorist policies. Following a jury determination in favor of the insured, the district court entered judgment for prejudgment interest according to Iowa Code section 535.3 (1983) rather than Iowa Code section 668.13. In addition, the court awarded prejudgment interest in excess of the combined limits of the policies. We affirm the district court's judgment in both instances.

I. *Background Facts and Proceedings.*

The following facts are gleaned from an "Agreed Statement of the Case" filed by the parties in this appeal. *See* Iowa R.App.P. 15(f).

Robert Gerald Vasquez sued LeMars Mutual Insurance Company on January 21, 1988. Vasquez's petition alleged the following. On July 16, 1984, Vasquez was injured while occupying a vehicle owned by Sheila Rae Peters. The Peters' vehicle was hit by a car owned by Ardith A. Wyborny and operated by Marcus Coty.

In addition, the petition alleged that Coty was negligent and was underinsured for this accident. Finally, the petition alleged that LeMars issued separate underinsured motorist policies to Peters and Vasquez and that Vasquez claimed damages under each policy.

In its answer and response to requests for admissions, LeMars admitted issuing the two policies and that each policy carried limits of $200,000.

LeMars asserted no exclusions. But it did dispute Coty's fault as alleged in the petition. LeMars also disputed the nature, extent, and cause of Vasquez's damages.

In a pretrial ruling, the district court determined that the two policies were cumulative and provided total available policy limits of $400,000. LeMars does not challenge this ruling.

At trial, there was no dispute about the policies or their limits. The parties stipulated that the policy limits for Wyborny and Coty were $50,000 and had been paid.

Under the district court's instructions, the jury was limited to determining the fault to be assigned to Coty and Vasquez, proximate cause, Vasquez's total damages, and what part of the total damages were future damages.

In the statement of the case, the district court told the jury the following:

> In this case your duty is to determine the relative fault of [Vasquez] and [Coty] which contributed to [Vasquez's] injuries; and if required in accordance with these instructions and special verdict forms to determine damages, if any, sustained by [Vasquez]. Your determinations in this regard will establish whether [Coty] was an "underinsured motorist" under the terms of the insurance policies issued by [LeMars]. The terms and conditions of the insurance policies including limited coverage are not in dispute and therefore do not need to be considered by you in determining the issues set forth above.

The district court used the special verdict forms found in I Iowa Uniform Civil Jury

Instructions 300.4 (1986) (single plaintiff-single defendant-comparative fault).

The jury assessed 100% of the fault to Coty and found Vasquez's total damages (without reduction for the Wyborny/Coty policy limits) were $500,000. The jury attributed $305,000 of this amount to future damages.

After trial, the district court entered judgment against LeMars for $400,000 "plus interest at the rate of ten percent per annum from and after the 21st day of January, 1988." Several days later LeMars moved to correct the judgment, challenging the district court's application of the interest provisions of section 535.3. LeMars insisted that the case was tried pursuant to our comparative fault statute, Iowa Code chapter 668. In these circumstances, LeMars argued, the court should have used section 668.13, the interest provision governing comparative fault cases.

In addition, LeMars challenged the district court's allowance of prejudgment interest in excess of the combined limits of the policies. LeMars pointed out that the underinsured motorist policies provide that "[t]he limit of liability shown in the schedule for this coverage [$200,000 on each policy or a total of $400,000] is our maximum limit of liability for all damages resulting from any one accident." LeMars argued that prejudgment interest is an element of damages covered by the policies and so is subject to the limits of liability— $400,000—stated in the policies.

Although the district court found LeMars' arguments persuasive, it was not convinced. The court overruled both grounds of the motion. It is from this ruling that LeMars appeals to this court. On appeal LeMars again raises the two issues raised in its motion to correct judgment filed in the district court.

This case was tried as a law action, and so our review is for correction of errors at law. *See* Iowa R.App.P. 4.

## II. *Interest.*

A legal encyclopedia defines interest as "the compensation allowed by law, or fixed by the parties, for the use, detention, or forbearance of money or its equivalent." 45 Am.Jur.2d *Interest and Usury* § 1, at 15 (1969).

Interest is also considered in another sense: as an element of damages. In this sense interest

means compensation allowed by law as additional damages for the lost use of money during the time between the accrual of the claim and the date of the judgment. Such interest may be allowed in actions for breach of contract or tort for the unlawful detention of money found to be due. "Damages" in such a case include both the original debt or damages and whatever interest ought to be added to make a just verdict. Interest, as a part of damages, is allowed, not by application of arbitrary rules, but as a result of the justice of the individual case and as compensation to the injured party. This type of interest is frequently called "moratory interest."

22 Am.Jur.2d *Damages* § 648, at 709–10 (1988).

■ There is a difference between interest fixed by contract that is to be paid before breach and interest recoverable as damages after breach. Contract interest is recoverable strictly according to the terms of the contract. In contrast, when a contract is breached the "nondefaulting party has sustained a wrong for which the law gives him redress by way of damages, including, in many cases, interest for retention of the funds due on breach." *Id.,* § 649, at 710–11. In addition a contract for interest ends at maturity unless there is an agreement to the contrary. In these circumstances, interest is allowed as damages after maturity. *Id.* at 711.

■ Iowa follows the general rule that interest runs from the time money becomes due and payable. *Mrowka v. Crouse Cartage Co.,* 296 N.W.2d 782, 783 (Iowa 1980).

In 1980, section 535.3 was amended to allow prejudgment interest from the commencement of the action. *See* 1980 Iowa Acts ch. 1170, § 1. Before that date Iowa followed the rule that interest on an unliquidated claim did not run until the claim

became liquidated. *Mrowka,* 296 N.W.2d at 783. "Liquidated" means the claim is certain and known. 22 Am.Jur.2d *Damages* § 652, at 713–14 (1988).

This court recognized one exception to the no interest rule on unliquidated claims: "in cases in which the entire damage for which recovery is demanded was complete at a definite time before the action was begun." *Mrowka,* 296 N.W.2d at 783. An action for wrongful death was one notable example of the exception. *Id.*

Personal injury actions, however, were not excepted. *Id.* So the general rule was that a personal injury never created a debt and did not become one until it was judicially ascertained and determined. *Id.* at 784. This was so even though certain damages—like medical expenses—might be fixed in amount and time of accrual before trial. The rule was likely based on practicalities. Future damages—like pain and suffering—were not so fixed. This technical distinction between past medical expenses and future damages would require separate awards on the various elements to be fixed by the jury, a procedure this court was probably not ready to accept.

In *Mrowka,* this court did, however, signal the beginning of the end for the common law principle of no interest on unliquidated damages:

> Finally, we note that the 1980 amendment to section 535.3, The Code 1979 (see 2 *Iowa Legislative Service* 146 (1980), providing that "interest [on all money due on judgments and decrees] shall accrue from the date of the commencement of the action,") apparently will mandate a change in our existing common law and uniform instructions.

*Mrowka,* 296 N.W.2d at 785.

Against this backdrop, we turn first to the section 535.3 issue and then to the prejudgment interest issue.

### III.  *The Section 535.3 Issue.*

As the district court properly noted, this issue is a narrow one: Is the interest to be awarded on the judgment to be governed by section 535.3 or section 668.13?

As we mentioned, section 535.3 was amended in 1980 to allow prejudgment interest. The statute now provides:

> Interest shall be allowed on all money due on judgments and decrees of courts at the rate of *ten* percent per year, unless a different rate is fixed by the contract on which the judgment or decree is rendered, in which case the judgment or decree shall draw interest at the rate expressed in the contract, not exceeding the maximum applicable rate permitted by the provisions of section 535.2, which rate must be expressed in the judgment or decree. *The interest shall accrue from the date of the commencement of the action.*
>
> This section does not apply to the award of interest for judgments and decrees subject to section 668.13.

Iowa Code § 535.3 (1991) (emphasis added).

The 1980 amendment did two things. It changed the interest rate on judgments and decrees from seven percent to ten percent per year. It also added language to section 535.3, advancing the interest accrual date to the date the action was commenced. We recently had this to say about the amendment:

> One of the primary purposes for the amendment to section 535.3 was to prevent persons obligated to pay money to another from profiting through delays in litigation. The statute is intended to discourage delay in trials and appeals. In general, prejudgment interest is not awarded as a penalty, but rather it reflects the lost value of the use of the money awarded.

*In re Marriage of Baculis,* 430 N.W.2d 399, 401 (Iowa 1988) (citations omitted).

In another recent case we left no doubt but that section 535.3 permits prejudgment interest on future damages:

> [The defendant] strenuously argues that allowing interest to accrue from the date of commencement of the action on those portions of the judgment compensating [the plaintiff] for its lost profits and future expenses is unfair. In the case of lost profits, [the plaintiff] will

receive prejudgment interest on money to which it had no claim of right at the commencement of the action; in the case of future expenses, [the plaintiff] will receive prejudgment interest on money which it has not yet spent. Notwithstanding these complaints, we are bound to respect the plain language of Iowa Code section 535.3. Perhaps it is only rough justice, but application of the statute's plain language will nevertheless further its goal of preventing persons rightfully obligated to pay money to another from profiting through delays in litigation.

*Mercy Hosp. v. Hansen, Lind & Meyer, P.C.*, 456 N.W.2d 666, 674 (Iowa 1990).

In 1987 the legislature fine-tuned the law on prejudgment interest in comparative fault cases. *See* 1987 Iowa Acts ch. 157, § 8 (now codified as Iowa Code section 668.13). Section 668.13 provides:

*Interest shall be allowed on all money due on judgments and decrees on actions brought pursuant to this chapter, subject to the following:*

1. *Interest, except interest awarded for future damages, shall accrue from the date of the commencement of the action.*

2. If the interest rate is fixed by a contract on which the judgment or decree is rendered, the interest allowed shall be at the rate expressed in the contract, not exceeding the maximum rate permitted under section 535.2.

3. *Interest shall be calculated as of the date of judgment at a rate equal to the coupon issue yield equivalent, as determined by the United States secretary of the treasury, of the average accepted auction price for the last auction of fifty-two week United States treasury bills settled immediately prior to the date of the judgment.* The state court administrator shall distribute notice monthly of that rate and any changes to that rate to all district courts.

4. *Interest awarded for future damages shall not begin to accrue until the date of the entry of the judgment.*

5. Interest shall be computed daily to the date of the payment, except as may otherwise be ordered by the court pursuant to a structured judgment under section 668.3, subsection 7.

6. Structured, periodic, or other non-lump-sum payments ordered pursuant to section 668.3, subsection 7, shall reflect interest in accordance with annuity principles.

(Emphasis added.)

As reflected in the italicized language, section 668.13 does four things. First, the legislation is a special statute pertaining to comparative fault cases only. Second, interest on tort judgments begins to run from the commencement of the action except in the case of future damages. So in this regard section 535.3 and section 668.13(1) treat interest on liquidated claims the same. Third, prejudgment interest is not allowed on future damages or unliquidated claims. This represents a significant departure from section 535.3. Last, the interest rate is a variable one. This also is a significant departure from section 535.3.

Section 668.13 applies to all causes of action accruing on or after July 1, 1987, and those accruing before July 1, 1987, which are filed on or after September 15, 1987. *See* 1987 Iowa Acts ch. 157, § 11. This action accrued on July 16, 1984, but was filed on July 21, 1988. So these time limits do not bar the application of section 668.13 to this case.

■ Turning to the immediate issue, we think the determination whether section 535.3 or section 668.13 controls depends on the language "brought pursuant to this chapter" in section 668.13. Section 668.13 by its terms includes only actions "brought pursuant to" chapter 668. Conversely, the language excludes any action to which chapter 668 has no application. Our conclusion is fortified by the last sentence of section 535.3 which was added by 1987 Iowa Acts ch. 157, § 1. It reads: "This section does not apply to the award of interest for judgments and decrees *subject to* section 668.13." (Emphasis added.) As already mentioned, the language of section 668.13 came out of the same piece of legis-

lation. We think this underscores a legislative intent that the interest provisions in chapters 668 and 535 be mutually exclusive.

Chapter 668 is triggered by any "claim involving the fault of more than one party to the claim." Iowa Code § 668.3(2); *Johnson v. Junkmann*, 395 N.W.2d 862, 867 (Iowa 1986). "Fault" is broadly defined to encompass many types of tort claims, including those submitted in this case: negligence as to Vasquez and Coty, and unreasonable failure to avoid injury or an unreasonable failure to mitigate damages as to Vasquez. *See* Iowa Code § 668.1. A "party" on the other hand is strictly limited to (1) a claimant; (2) a person named as a defendant; (3) a person who has been released from liability by the claimant; or (4) a third-party defendant. *See* Iowa Code § 668.2.

■ Here the *claim* is essentially a contractual one. Vasquez (the insured) sued LeMars (the insurer) for breach of the insurance policies. Recently, we recognized that an underinsured claim may be "founded on contract." *Veach v. Farmers Ins. Co.*, 460 N.W.2d 845, 849 (Iowa 1990). We also recognized that the measure of recovery for an underinsured claim is

> for unpaid damages for personal injury resulting from a motor vehicle accident where the amount the insured person is legally entitled to recover against the owner of the underinsured motor vehicle exceeds such owner's bodily injury policy limit.

*Id.* In the present case, the district court wisely noted this blend of contract and tort principles:

> In the underinsured claim context, one sees a striking example of an intricate and interdependent meld of contract and tort principles. Although plaintiff's claim is brought upon the contract of insurance, in order to determine liability under such policy, resort must be had to traditional tort principles of fault as modified by chapter 668. However, traditional tort principles are not all that may be or are relied upon to base a claim under the underinsured motorist policy. Plaintiff must still prove the existence of coverage and in the bringing of such claim faces the possibility of a myriad of contract defenses which may be brought by its insurer. In this case, defendant stipulated to the existence of the insurance policies and the only remaining issue left for the jury's determination was plaintiff's underinsured status under the policy. To simply focus upon the determination of plaintiff's underinsured status in this case where all other aspects of the contract were admitted and characterize plaintiff's claim as sounding in tort would, in the opinion of this court, amount to ignoring the true nature of plaintiff's claim to recover on this contract of insurance.

The parties to this underinsured claim are, of course, Vasquez and LeMars. To be sure, Vasquez had to prove that Coty was at fault. This was an element of Vasquez's underinsurance claim against LeMars. LeMars could have escaped liability under the policies by proving Vasquez was more than fifty percent at fault. *See* Iowa Code § 668.3.

The underlying tort claim involved Vasquez, who was injured, and Coty, who allegedly injured him in a negligent manner. Had Vasquez sued Coty on the tort claim and had the fault of each been placed in issue as it was in this case, chapter 668 would have applied. This is so because of the provisions of section 668.3(2) ("claim involving the fault of more than one party to the claim"). Under this provision we would have a "claim [Vasquez's] involving the fault [negligence] of more than one party to the claim [Vasquez and Coty]." Iowa Code § 668.3(2); *see Junkmann*, 395 N.W.2d at 867–68 (using similar analysis where the defendant's fault and a released party's fault were placed in issue but plaintiff's fault was not).

In contrast, the claim here is contractual. The parties to this claim are Vasquez and LeMars. Only Vasquez's fault has been placed in issue. So we do not have a "claim involving the fault of more than one party to the claim" as section 668.3(2) requires. At most we have a claim (contract) involving the fault (negligence) of only one

party (Vasquez) to the claim. Simply put, the underinsured motorist claim did not trigger chapter 668 because the requirements of section 668.3(2) were not met.

We hold therefore that Vasquez's underinsured motorist claim against LeMars was not brought pursuant to chapter 668. We conclude the district court correctly determined that section 535.3 and not section 668.13 controlled the application of interest on the judgment.

## IV. *The Prejudgment Interest Issue.*

■■■ Like the first issue this one is also narrow: whether the prejudgment interest under section 535.3 is subject to the policy limits of the underinsured motorist policies.

The relevant language in the policies provides:

We will pay *damages* which a covered person is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury:

1) sustained by a covered person; and

2) caused by an accident.

. . . .

THE LIMIT OF LIABILITY. The limit of liability shown in the schedule for this coverage is our maximum limit of liability for *all damages* resulting from any one accident.

(Emphasis added.)

LeMars' position is that the prejudgment interest here is an element of damages and therefore subject to the "Limits of Liability" provision of the policies. We would agree had this been a case in which an insurer had been called upon to pay the judgment against the insured pursuant to a policy indemnifying the insured. In those circumstances the prejudgment interest is an element of damages. *See Farm Bureau Mut. Ins. Co. v. Milne,* 424 N.W.2d 422, 425 (Iowa 1988).

In *Milne*—a case LeMars heavily relies on—a third-party claimant sued the insured. The insurer settled with the claimant and paid the damages in accord with the indemnity provision in the policy with the insured. The insurer also paid the claimant prejudgment interest that exceed-

ed the policy limits. The insurer then brought a declaratory judgment action against the insured to determine whether the insurer was legally or contractually obligated to pay such prejudgment interest. We said there was no such obligation because interest on unliquidated claims constitutes an element of compensatory damages. *Milne,* 424 N.W.2d at 425 (citing with approval *Guin v. Ha,* 591 P.2d 1281, 1291 (Alaska 1979)). In this context, prejudgment interest is necessary to make the third-party claimant whole because the third-party claimant has lost the use value of the damages eventually awarded. *Guin v. Ha,* 591 P.2d 1281, 1287 (Alaska 1979).

Here the judgment did not come about as a result of a third-party claimant suing the insured. As we said earlier, this is a breach of contract action filed by the insured against his insurer. It is not a tort action brought by a third-party claimant against the insured. This fact, distinguishes the present case from *Milne.*

The policies limit LeMars' liability to "*damages* ... a covered person is legally entitled to recover from the owner or operator of an underinsured motor vehicle *because of bodily injury sustained by a covered person and caused by the accident.*" The district court did not award the prejudgment interest as an element of damages "because of bodily injuries sustained by a covered person." Rather the court awarded such interest simply because of LeMars' breach of the policy provisions to pay the underinsured limits. The prejudgment interest here constitutes "damages" because of LeMars' failure to discharge a debt when it should have been paid. *See Prudential Ins. Co. v. Goldsmith,* 239 Mo. App. 188, 196, 192 S.W.2d 1, 3 (1945) ("The general rule is that, in the absence of an agreement to pay interest, it is implied by law as damages for not discharging a debt when it ought to be paid."); 22 Am.Jur.2d *Damages* § 649, at 710–11 (1988). But that is far different from saying the prejudgment interest constitutes "damages" because of bodily injuries.

We hold that the prejudgment interest here is not an element of damages subject

to "The Limit of Liability" provision in the policies. The district court was correct in determining that the prejudgment interest awarded under section 535.3 is not subject to the combined limits of the policies.

One commentator makes a strong policy argument for such a result in the context of an uninsured motorist claim:

> Once it is established that a claimant is entitled to compensation provided by an uninsured motorist insurance coverage, there is little, if any, justification for the insurer to derive economic benefits from having forced the insured to seek an adjudication of the claim. To allow insurers the benefit of the time value due the insured from the time of the accident to the date of payment following an adjudication of the funds is to encourage insurers to delay payments. Once it is determined that payments were due the insured on the basis of injuries caused by an uninsured tortfeasor, the benefits of having delayed payment should not be retained by the insurer. Thus, a persuasive argument can be made that a claimant should be entitled to interest on a compensation payment when it has been necessary for the claimant to seek an adjudication by an arbitration or a court that the insurer is obligated to pay the insured. *Furthermore, it also follows that the insurer should be liable for such interest even when the award or judgment itself is equal to the company's maximum coverage limits.*

Widiss, *Uninsured and Underinsured Motorist Insurance*, § 20.6, at 131 (2d ed. 1990) (emphasis added). We find this reasoning persuasive and it supports the result we reach. It is also consistent with the underlying purpose of the 1980 amendment to section 535.3.

V. *Disposition.*

In summary, the prejudgment interest provision of section 535.3, rather than section 668.13, applied to the judgment rendered here on the underinsured motorist claim. In addition, such prejudgment interest was not an element of damages subject to the combined limits of the underinsured motorist policies.

Finding no error, we affirm.

AFFIRMED.