Elizabeth FRUNZAR, Appellee,

v.

**ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY,**
Appellant.

No. 95–245.

Supreme Court of Iowa.

May 22, 1996.

Stanley J. Thompson of Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines, for appellant.

Marc S. Harding, Des Moines, for appellee.

Considered by McGIVERIN, C.J., and CARTER, NEUMAN, SNELL, and ANDREASEN, JJ.

McGIVERIN, Chief Justice.

The overall issue in the present case is whether the district court properly awarded plaintiff Elizabeth Frunzar uninsured motorist coverage under an insurance policy issued to her father for injuries she sustained in an automobile accident. We affirm in part, reverse in part, and remand with instructions.

I. *Background facts and proceedings.* On March 26, 1993, plaintiff Frunzar was a passenger in an automobile driven by a friend named Bobby Kilgore. At approximately 3:00 a.m., Frunzar and Kilgore were involved in an automobile accident at an intersection on a Des Moines street in which Kilgore's vehicle was struck on the passenger side by another vehicle and propelled into a light pole. Frunzar, who was thrown thirty feet from Kilgore's vehicle upon impact, suffered severe facial and other bodily injuries in the accident and was hospitalized for five days following the accident.

Frunzar, age twenty-nine at the time of the accident, is the biological daughter of Alan and Diana Elder of Urbandale. At the time of the accident, Alan (Frunzar's father) maintained an automobile insurance policy with defendant Allied Property and Casualty Insurance Company (Allied). The insurance policy contained uninsured motorist (UM) coverage as required by Iowa Code section

516A.1 (1993). The limit of liability for UM coverage in Alan's policy with Allied was $300,000 per accident.

After the accident, Frunzar sought UM coverage from Allied as an insured under her father Alan's insurance policy. In a letter to Frunzar, Allied denied her claim for UM coverage under the policy because, in Allied's opinion, Frunzar was not an "insured" or "family member" as defined in the policy. In its letter denying coverage, Allied expressly reserved "all other rights, defenses or contentions" which were available to it under the policy and stated it did not "waive any rights or defenses which it ... [had] or which may become known to it in the future."

In November 1993, after Allied denied her claim for UM coverage under her father Alan's policy, Frunzar filed a petition in district court seeking contract damages against Allied. In her petition, plaintiff alleged neither the driver of the automobile in which she was riding nor the driver of the vehicle which struck the vehicle in which she was riding had bodily injury liability coverage at the time of the accident. Although Allied denied this averment in its answer for lack of sufficient information to respond, it later stated in its answers to plaintiff's request for admissions that discovery was ongoing concerning this issue.

The case proceeded to a bench trial. The district court believed the fighting issue at trial was whether or not Frunzar was a resident of her father Alan's household at the time of the accident to qualify for coverage under the UM coverage section of his automobile insurance policy.

At the close of plaintiff's case-in-chief and at the close of all of the evidence, Allied moved for a directed verdict. *See* Iowa R.Civ.P. 216. In its motion, Allied contended:

> [P]laintiff must prove ... that either the owner or the operator of the vehicle at fault [for the accident] was uninsured. There has been absolutely no competent evidence in this trial at all, even if the court could make findings ... of insurance or lack thereof.

That is a matter of proof that the plaintiff has. It's a matter that the plaintiff certainly was aware of when ... [she] filed [her] petition. It was certainly something that plaintiff was aware of in the request for admissions. It's not a [surprise] in this case that those are matters that need proof, and there has simply been no proof whatsoever of whether either of the two vehicles were either owned or operated by uninsured motorists.

And finally, defendant [Allied] would move for directed verdict on the ground that there is insufficient evidence to prove that the plaintiff was a family member who was a resident of Alan G. Elder's household on March 26, 1993.

The court overruled Allied's motion.

After the bench trial in this law action, the court filed its findings of fact, conclusions of law, and judgment. The court found that the accident was caused by the other motor vehicle that struck the vehicle in which plaintiff was a passenger (the Kilgore vehicle) and that plaintiff was not at fault in the accident. The court ruled plaintiff was a resident of her father Alan's household at the time of the accident and, therefore, an insured under the Allied policy. Further, the court ruled no insurance (other than the Allied policy) was available to plaintiff from the Kilgore vehicle or the other vehicle that would cover her bodily injuries sustained in the accident. In sum, the court found plaintiff incurred damages in the automobile accident on March 26, 1993, and was legally entitled to recover damages from the owner or operator of an uninsured motor vehicle.

The court ordered Allied to pay plaintiff $191,985.00 in damages plus interest under the UM coverage section of the policy. The court's judgment did not state the rate of interest or the interest commencement date.

After the court's ruling, Allied filed a motion pursuant to Iowa rule of civil procedure 179(b) requesting that the court specify whether the interest on the judgment was recoverable under Iowa Code section 535.3 or under Iowa Code section 668.13. Allied also challenged, in the event the court awarded interest under section 535.3, the constitutionality of the interest award under the Four-

teenth Amendment to the United States Constitution and article I, section 6 of the Iowa Constitution which guarantee equal protection of federal and state laws.

In its ruling on Allied's rule 179(b) motion, the court ordered that interest at a rate of ten percent be taxed on the entire judgment from the date plaintiff filed her petition. *See* Iowa Code § 535.3. The court rejected Allied's equal protection argument.

Allied appealed the judgment and the ruling on its rule 179(b) motion. Iowa R.App.P. 1.

Unless otherwise stated, we review the court's legal conclusions for errors at law. Iowa R.App.P. 4.

II. *Proof of UM claim.* Allied's insurance policy sets forth conditions plaintiff must satisfy in order to recover UM benefits. Under the UM coverage provisions of Alan's policy, Allied agreed to

... pay damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury:"

1. Sustained by an "insured;" and

2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle."

An "insured" under the policy included Frunzar's father Alan, the named insured, and any "family member." The policy defined a "family member" as a person related to the named insured "by blood, marriage or adoption who is a resident of [the named insured's] household." Under the terms of the policy, an "uninsured motor vehicle" means a land motor vehicle or trailer of any type to which "no bodily injury liability bond or policy applies at the time of the accident."

■ As a condition of recovering UM benefits, plaintiff bears the burden of proving she was a resident of the named insured's (her father's) household on the date of the accident. Plaintiff also bears the burden of proving that the motor vehicle or vehicles responsible for causing her injuries were not covered by liability insurance on the date of

the accident. *Griffith v. Farm & City Ins. Co.*, 324 N.W.2d 327, 329–30 (Iowa 1982).

III. *Insurance coverage issues.* In the present case, Allied contends plaintiff did not present substantial evidence to satisfy the following two coverage conditions under the policy: (1) plaintiff was an "insured" (as a resident of the named insured's household) under the policy at the time of the accident; and (2) the Kilgore vehicle (in which plaintiff was a passenger) and the other vehicle which caused the accident were uninsured under the policy at the time of the accident.

In its motion for directed verdict, Allied contended that plaintiff's evidence was not sufficient to prove that plaintiff was a resident of the named insured's (her father's) household on March 26, 1993, the date of the accident. Allied also contended that substantial evidence did not support plaintiff's claim at trial that the owner or operator of either of the two vehicles involved in the March 26, 1993, accident was uninsured under the terms of Allied's policy.

■ On appeal, Allied contends that no fact question was generated at the trial on the above issues and, therefore, the court should have sustained its motion for directed verdict. In considering the propriety of a motion for directed verdict, we consider the evidence in the light most favorable to the party against whom the motion was made. Iowa R.App.P. 14(f)(2); *Wieseler v. Sisters of Mercy Health Corp.*, 540 N.W.2d 445, 448 (Iowa 1995).

■ When reviewing the district court's decision on plaintiff's motion for directed verdict, we review the evidence in the same light as the district court and determine whether a fact or jury question was generated by the evidence. *Fiala v. Rains*, 519 N.W.2d 386, 387 (Iowa 1994). The court's findings of fact in this law action are binding upon us if supported by substantial evidence. Iowa R.App.P. 14(f)(1). Evidence is substantial for purposes of sustaining a finding of fact if a reasonable person would accept the evidence as adequate to reach a conclusion. *Falczynski v. Amoco Oil Co.*, 533 N.W.2d 226, 230 (Iowa 1995). When reviewing evidence for its substantiality, we view it in the

light most favorable to upholding the district court's judgment. *Id.*

We consider each of Allied's insufficiency arguments in turn.

■ A. *Resident of the named insured's household.* The first coverage issue presented by Allied on appeal is whether substantial evidence supports the district court's conclusion that plaintiff was a resident of her father's household at the time of the accident to qualify her for UM coverage.

Under the coverage provisions of Allied's policy issued to plaintiff's father, plaintiff must have been a resident of her father Alan's household at the time of the March 26, 1993, accident and therefore an "insured" under the policy in order to qualify for UM benefits. This "residency" issue was the primary issue disputed at trial. After an exhaustive factual analysis, the district court found plaintiff met her burden of proof on this residency issue. On appeal, Allied claims (as it did in its motion for directed verdict) that plaintiff presented insufficient evidence to substantiate her allegation that she was an insured under her father's automobile insurance policy at the time of the accident.

In *AMCO Insurance Co. v. Rossman,* 518 N.W.2d 333 (Iowa 1994), we approved certain factors a court may consider or on which a court may instruct the jury to determine whether a claimant was a resident of a named insured's household at the time of a loss. *Id.* at 335. Although not deemed an exclusive list, permissible factors include:

(1) Whether the claimant was living under the same roof as the named insured at the time of the loss;

(2) Whether the relationship between the claimant and the named insured was close and intimate;

(3) Whether the claimant's stay at the household of the named insured was likely to be substantial;

(4) The age of the claimant;

(5) Whether the claimant had a residence separate from that of the named insured;

(6) Whether the claimant was self-sufficient at the time of the loss; and

(7) The frequency and duration of the claimant's stay in the named insured's household.

*Id.* Under the *AMCO* case, no one factor controls the residency analysis and the term "resident" is not susceptible to one overriding definition. *Id.*

Although Allied presented evidence at trial in an attempt to show plaintiff was not a resident of her father Alan's household at the time of the accident, we believe that substantial evidence supports the district court's conclusion that she was such a resident. The court found the following material facts (among many others) in its residency analysis:

—Plaintiff, her father, and her mother all testified plaintiff has lived at her parents' home since her divorce in 1990, including at the time of the accident. She did not have an address of her own at the time of the accident. Rather, she had a bedroom in her parents' basement with a bed where she slept and kept clothing and other personal items.[1]

—Plaintiff used her parents' home address for mail and tax purposes.

—The relationship between plaintiff and her parents continued at the time of the accident to be that of a close parent-child relationship (even though her parents did not approve of their daughter's lifestyle). Plaintiff exercised regular visitation with her son at her parents' home since her divorce in 1990.

---

1. Allied contended at trial and contends on appeal that plaintiff's sole residence at the time of the accident was at her sister's apartment in Des Moines. The facts, however, do not support Allied's contention. Testimony showed plaintiff had only stayed overnight at her sister's apartment a total of approximately ten times prior to the accident, or about once a month. She would typically sleep on a couch at her sister's apartment on nights when she had been out drinking and was not welcome at home. Plaintiff did not have a bedroom at her sister's apartment and did not keep clothing or personal items at the apartment on a regular basis. Also, plaintiff did not use the address of her sister's apartment for mail purposes.

—The intended duration of plaintiff's stay at her parents' home was indefinite. At the time of the accident, plaintiff was twenty-nine years old, divorced, unemployed, and had no immediate prospects of becoming self-supporting. Her 1992 income tax return showed an income of approximately $8,500 from all sources. She did not pay rent at either her parents' house or her sister's apartment where she periodically would stay overnight.

We believe the above facts constitute substantial evidence that would lead a reasonable trier of fact to conclude plaintiff was a resident of her father Alan's household at the time of the accident giving rise to plaintiff's UM claim against Allied, her father's automobile insurer. Whether a conclusion contrary to that made by the district court may be drawn from the evidence is not the question before us. *See New Homestead v. Iowa Dep't of Job Serv.*, 322 N.W.2d 269, 270 (Iowa 1982) ("Evidence is not insubstantial merely because it would have supported contrary inferences.").

We conclude that Allied's motion for directed verdict as to this issue was properly overruled. We also believe substantial evidence supports the court's conclusion that plaintiff was a resident of the named insured's household at the time of the accident. *See Hameed v. Brown*, 530 N.W.2d 703, 707–08 (Iowa 1995). Therefore, we affirm the district court on the residency issue.

B. *Uninsured status of the motor vehicles involved in the accident.* In addition to the residency coverage issue, Allied presents a second coverage issue on appeal concerning the alleged "uninsured status" of the two motor vehicles involved in the accident in

which plaintiff sustained injuries. Allied contends substantial evidence does not support the district court's conclusion that the two vehicles were not covered by liability insurance at the time of the accident.

In plaintiff's petition, she alleged that neither the operator of the vehicle in which she was riding (the Kilgore vehicle) nor the operator of the vehicle which struck the vehicle in which she was riding was covered by liability insurance at the time of the accident. It is undisputed that pursuant to our decision in *Griffith*, 324 N.W.2d at 329, plaintiff had the burden at trial to prove the uninsured status of the vehicle or vehicles which caused the accident and her resulting damages as a condition for qualifying for UM coverage under the Allied policy. *Id.* at 329. At trial, plaintiff attempted to meet her burden under *Griffith* by testifying she knew of no other applicable insurance policy that would have covered the accident. To substantiate or corroborate her testimony, plaintiff's counsel presented a "professional statement" on the issue at the close of her case-in-chief.[2]

After considering plaintiff's testimony, over Allied's hearsay objection, on this coverage issue, the district court found plaintiff proved that the two motor vehicles were not covered by liability insurance at the time of the accident. The court stated it did not consider plaintiff's counsel's professional statement in reaching this conclusion.

In order to determine whether substantial evidence supports the court's ruling on the uninsured status issue, we must first consider whether the court erred in admitting certain evidence to prove the uninsured status of the two motor vehicles involved in the accident.

---

**2.** At the time of trial, it is apparent that both plaintiff and the district court believed that the only UM coverage condition that would be contested by Allied was whether plaintiff could satisfy the policy's standard residency requirement. Prior to trial, in its answer to plaintiff's petition seeking UM contract benefits, Allied stated it was unable to either admit or deny plaintiff's uninsured status allegation because "it lacked sufficient information to plead at [that] time." The record does not reflect that Allied ever amended this answer. In its response to plaintiff's request for admissions, Allied stated "discovery was ongoing" on plaintiff's requested admissions con-

cerning the alleged uninsured status of the motor vehicles involved in the accident. The record does not reflect that Allied ever supplemented its responses to either admit or deny plaintiff's allegations that neither the Kilgore vehicle nor the other vehicle was covered by liability insurance at the time of the accident. It was only after plaintiff's case-in-chief and in its motion for directed verdict that Allied contended (without presenting any affirmative evidence controverting that presented by plaintiff) that plaintiff had not satisfied her burden of proof on that coverage issue.

1. *Hearsay objection to plaintiff's testimony.* At trial, plaintiff was asked the following questions and gave the following answers regarding the alleged uninsured status of the motor vehicles involved in the accident:

Q: [H]ave you talked with Bobby Kilgore[, the driver of the vehicle in which plaintiff was riding at the time of the accident,] to see whether he had insurance on his vehicle?

A. Yes, I did.

Q. And what were you told?

[Defense counsel:] Your Honor, I am going to object. That calls for hearsay, and I don't believe it's admissible under any exception to the hearsay rule.

THE COURT: What exception would that be, [plaintiff's counsel]?

[Plaintiff's counsel:] I am not sure that there is an exception for what Mr. Kilgore would have told her, so let me redirect that.

. . . .

Q: To the best of your knowledge, is there any insurance that covers this accident other than the insurance that Allied has?

A. No.

Allied also timely objected to the latter question on hearsay and inadequate foundation grounds. *See Osborn v. Massey–Ferguson, Inc.,* 290 N.W.2d 893, 897 (Iowa 1980) (district court sustained objections to testimony based on matters contained in certain letters not in evidence on grounds that the opinions were without proper foundation and based on hearsay). However, the court overruled Allied's objections and considered plaintiff's testimony admissible on the uninsured status issue.

On appeal, Allied contends the court erred in overruling Allied's hearsay objection to plaintiff's testimony. Plaintiff contends that the district court properly overruled Allied's hearsay objection and, in the alternative, plaintiff's testimony was admissible under three separate exceptions to the hearsay rule. *See* Iowa R.Evid. 803(24), 804(b)(3), 804(b)(5).

We agree with Allied that plaintiff's testimony was plainly hearsay and was improperly considered by the court with respect to the uninsured status of the motor vehicles involved in the accident. *See State Farm Mut. Auto. Ins. Co. v. Stewart,* 288 So.2d 723, 724 (Miss.1974) (testimony, objected to by defense counsel as hearsay, of plaintiff's counsel on the "uninsured status" issue was inadmissible hearsay). Plaintiff's testimony was based solely on alleged out-of-court statements made to her by a nontestifying declarant, Bobby Kilgore, and was offered to prove the truth of the matter asserted (that the two motor vehicles were not covered by liability insurance at the time of the accident). *See* Iowa R.Evid. 801(c), 802. Admission of hearsay evidence over a proper objection is presumed to be prejudicial error unless the contrary is affirmatively established. *State v. Rice,* 543 N.W.2d 884, 887 (Iowa 1996); *accord State v. Nims,* 357 N.W.2d 608, 609 (Iowa 1984). We believe prejudice exists in this instance.

In reaching its judgment for plaintiff, plaintiff's testimony was the sole evidence the district court considered to decide the uninsured status coverage issue. In its ruling, the court expressly stated it did not consider statements made by plaintiff's counsel on the issue at trial (discussed below in division III(B)(2)). Therefore, the court's admission of plaintiff's testimony on the uninsured status issue constituted prejudicial error.

Also, no exceptions to the hearsay rule justify the court's consideration of this evidence. At trial, plaintiff voiced no exception or exceptions to the hearsay rule at the time of Allied's objection that would have permitted the court to consider plaintiff's hearsay testimony in reaching a conclusion on the uninsured status issue. The exceptions to the hearsay rule raised by plaintiff in her appeal brief were not raised at trial and, therefore, are deemed waived for appeal purposes. *See Bratton v. Bond,* 408 N.W.2d 39, 44 (Iowa 1987).

Therefore, we conclude the district court committed prejudicial error by overruling Allied's objection to plaintiff's testimony on the

uninsured status issue and in considering such evidence in reaching its ultimate judgment for plaintiff.

However, that conclusion does not end the matter of whether the judgment for plaintiff must be set aside.

■ 2. *Professional statement.* Notwithstanding plaintiff's own testimony on the uninsured status issue, plaintiff contends on appeal that certain evidence presented to the court by her attorney at the close of her case-in-chief, referred to by counsel as a "professional statement," was admissible to prove the uninsured status of the two vehicles involved in the accident as required by *Griffith,* 324 N.W.2d at 329. On appeal, in seeking to uphold the district court's conclusion that plaintiff had proved the uninsured status of the two motor vehicles involved in the accident, plaintiff contends the professional statement should have been considered by the court in reaching that conclusion. We agree with plaintiff.

■ Plaintiff's counsel's professional statement provided, in pertinent part:

[W]e have reviewed any other possible sources of insurance, either on the Kilgore vehicle or on the other vehicle, and that we found no other place that there might be coverage.

Allied moved to strike the professional statement from the record, claiming the statement was "inappropriate." [3] The court reserved ruling on Allied's objection and, in its later decision, without ruling on the objection, stated it did not rely on the statement in finding the motor vehicles uninsured for purposes of resolving plaintiff's claim.

■ Allied's motion to strike plaintiff's counsel's professional statement on grounds that the statement was "inappropriate" has no specific foundation in the Iowa rules of evidence. *See State v. Hepperle,* 530 N.W.2d 735, 738 (Iowa 1995) ("The objection must be sufficiently specific to alert the trial court to the basis for the complaint so that if error does exist the court may correct it. . . ."). Therefore, we believe Allied's objection was

without legal significance and should have been overruled by the district court. *See id.* ("A general objection preserves nothing for review.").

■ Under Iowa law, professional statements are treated as affidavits and the attorney making the statement may be cross-examined regarding the substance of the statement. *State v. Williams,* 315 N.W.2d 45, 52–53 (Iowa 1982); *Cogley v. Hy Vee Food Stores, Inc.,* 257 Iowa 1381, 1386–87, 137 N.W.2d 310, 313 (1965). Although Allied clearly had the right, it did not cross-examine plaintiff's counsel regarding the content of his professional statement.

We conclude that plaintiff's counsel's professional statement was admissible under the existing record and could have been considered by the district court on the "uninsured status" issue.

■ 3. *The "all reasonable efforts" standard for proving the uninsured status of a motor vehicle.* In *Griffith,* 324 N.W.2d at 329, we adopted the generally recognized view "that in order for an insured to recover . . . [UM] coverage, the insured bears the burden of proving the uninsured status of the other motorist or vehicle." *Id.; accord* 8C John A. Appleman, *Insurance Law and Practice* § 5087, at 321–22 (1981) (hereinafter Appleman); 1 Alan I. Widiss, *Uninsured and Underinsured Motorist Insurance* § 8.26, at 419 (2d ed. 1992) (hereinafter Widiss). Courts have recognized in certain cases that it is often difficult for a claimant to prove a negative fact, such as the uninsured status of a motor vehicle. *See, e.g., Motors Ins. Corp. v. Williams,* 576 So.2d 218, 221 (Ala.1991); *Jones v. Bituminous Cas. Corp.,* 821 S.W.2d 798, 803 (Ky.1991); *Talazac v. Phoenix of Hartford Ins. Co.,* 259 So.2d 636, 638 (La.Ct.App.1972); *Merchants Mut. Ins. Co. v. Schmid,* 56 Misc.2d 360, 288 N.Y.S.2d 822, 825 (Sup.Ct.1968); *Brown v. United Servs. Auto. Ass'n,* 684 P.2d 1195, 1202 (Okla. 1984); *State Farm Mut. Auto. Ins. Co. v. Matlock,* 462 S.W.2d 277, 278 (Tex.1970); *Dixie Ins. Co. v. Mello,* 75 Wash.App. 328,

---

**3.** In its brief on appeal and at oral argument, Allied contends plaintiff's counsel's professional statement constituted inadmissible hearsay testimony. This objection, however, was not made at trial and may not be raised for the first time on appeal. *See Bratton,* 408 N.W.2d at 44.

877 P.2d 740, 744 (1994). According to one commentator,

> [t]he appropriateness ... of placing the burden of producing evidence and/or the burden of persuasion, on the claimant in this context ought to be evaluated carefully, because allocating this burden to the claimant may constitute an insurmountable obstacle to recovery in instances when there is essentially no information available about the status of the tortfeasor as an insured or uninsured motorist.

Widiss § 8.26, at 422 (footnotes omitted).

Due to this proof problem inherent in many UM claims, various courts and commentators have suggested that the initial burden on the insured of proving the uninsured status of a motor vehicle is somewhat relaxed:

> The [UM] claimant ... can discharge his or her burden either by showing that the tortfeasor against whom he or she is claiming was uninsured ... or by showing that the claimant used *"all reasonable efforts"* to ascertain the existence of any applicable liability insurance and was unsuccessful in this effort.

*Mello*, 877 P.2d at 744 (emphasis added); *see, e.g., Williams*, 576 So.2d at 221; *Ogle v. Long*, 551 So.2d 914, 915–16 (Ala.1989); *Van Hoozer v. Farmers Ins. Exch.*, 219 Kan. 595, 549 P.2d 1354, 1367 (1976); *Schmid*, 288 N.Y.S.2d at 825; *Brown*, 684 P.2d at 1202; *Matlock*, 462 S.W.2d at 278; *Royal Indem. Co. v. Senterfitt*, 474 S.W.2d 941, 943 (Tex. Civ.App.1971); *Signal Ins. Co. v. Walden*, 10 Wash.App. 350, 517 P.2d 611, 613 (1973); Appleman § 5087, at 322–23; Widiss § 8.26, at 423–25.

Under this relaxed standard of proof, if the UM claimant presents evidence that he or she used "all reasonable efforts" to ascertain the existence of any applicable liability insurance and was unsuccessful, then an inference may be drawn that the other vehicle or vehicles were uninsured. *Schmid*, 288 N.Y.S.2d at 825; *Matlock*, 462 S.W.2d at 278; *see, e.g., Valdes v. Prudence Mut. Cas. Co.*, 226 So.2d 119, 120 (Fla.Dist.Ct.App. 1969); *Van Hoozer*, 549 P.2d at 1367; *Abraham v. Great Am. Ins. Co.*, 21 Ohio Misc. 170, 256 N.E.2d 265, 267 (Ohio Ct.Comm.

Pleas 1969); *Brown*, 684 P.2d at 1202; *Walden*, 517 P.2d at 613. Whether the claimant seeking UM coverage has presented sufficient evidence to raise this inference is a question of law that the trial court may decide when ruling on a motion for directed verdict made by the insurer at the close of the claimant's case-in-chief. If the claimant is successful, the burden of going forward with affirmative evidence to the contrary shifts to the defendant insurer. *Valdes*, 226 So.2d at 120; Appleman § 5087, at 323; Widiss § 8.26, at 425–26. The ultimate burden of persuasion on the uninsured status coverage issue remains, however, at all times with the claimant. *Cf. Griffith*, 324 N.W.2d at 329.

After a consideration of all the evidence, the trier of fact may then decide whether the claimant sustained its burden to prove the uninsured status of the alleged negligent motor vehicle or vehicles involved in the accident.

As we believe the "all reasonable efforts" standard herein described can be reasonably and fairly applied in UM coverage cases, we adopt it today. We believe it is the proper method for trial courts to analyze the record, protect both parties, and decide whether a claimant has proved a negative fact in the UM context, *i.e.*, the uninsured status of a motor vehicle. However, that standard was not used by the district court here.

In the present case, the district court concluded that, based on the limited record presented, no other insurance was available to plaintiff from the Kilgore vehicle or the other vehicle involved in the accident.

In fairness to the district court, it had no precedent from this court and thus did not make a finding in regard to whether plaintiff used all reasonable efforts to determine whether the Kilgore vehicle and the other vehicle involved in the accident were "uninsured" as defined in Allied's policy.

We reverse due to the district court's error in admitting plaintiff's hearsay testimony. We remand for a new trial on the uninsured status issue in order for the district court to determine from evidence the parties may present anew under the above analytical

framework whether the motor vehicles involved were uninsured.

If on retrial the court determines that plaintiff met her burden of proof on the uninsured status coverage issue under *Griffith*, 324 N.W.2d at 329, then the district court's prior conclusion on this issue and the judgment reached should be reaffirmed by the district court.

If the district court determines plaintiff has not met her burden of proof on this issue, then the court shall dismiss plaintiff's petition.

IV. *Interest rate on the UM judgment.* After the trial, the district court rendered judgment in favor of plaintiff and against Allied in the amount of $191,985.00 plus "interest" and the court costs of the action. In a later ruling on Allied's rule of civil procedure 179(b) motion, the court ordered that interest at a rate of ten percent per year be taxed on the entire judgment from the date of the commencement of the action. *See* Iowa Code § 535.3 (1995); *Vasquez v. Le-Mars Mut. Ins. Co.*, 477 N.W.2d 404, 409–10 (Iowa 1991).

Allied contends on appeal that the district court erred by awarding interest under Iowa Code section 535.3 and, in the alternative, that an interest award under section 535.3 in the present case is unconstitutional. We address each argument in turn.

■■■■ 1. *Interest rate under Iowa Code section 535.3.* In *Vasquez*, 477 N.W.2d at 410, an *under* insured motorist (UIM) case relied on by the district court, we held that Iowa Code section 535.3 controlled the application of the interest on the judgment entered against an insurer and in favor of an insured. That section provides in pertinent part:

> Interest shall be allowed on all money due on judgments and decrees of courts at the rate of ten percent per year, unless a different rate is fixed by the contract on which the judgment or decree is rendered. . . . The interest shall accrue from the date of the commencement of the action.
>
> *This section does not apply to the award of interest for judgments and decrees subject to section 668.13.*

Iowa Code § 535.3 (emphasis added). If the court's judgment is subject to the interest provision of the comparative fault act, *see id.* § 668.13 (1995), then section 535.3 expressly does not apply. An action is "subject to section 668.13" if the action is *"brought pursuant to [chapter 668] . . . ." Id.* (emphasis added).

In the *Vasquez* case, we concluded that the plaintiff's UIM claim against the insurer was *not* "brought pursuant to" the comparative fault act but rather was brought based on an alleged contractual breach by the insurer against one of its insureds. *Vasquez*, 477 N.W.2d at 410. According to the decision, "the *claim* [was] essentially a contractual one." *Id.; see Wetherbee v. Economy Fire & Cas. Co.*, 508 N.W.2d 657, 659 (Iowa 1993) (a claim for UIM benefits was based on the insurance policy).

Like plaintiff Vasquez's claim for UIM coverage against his insurer, we believe plaintiff Frunzar's UM claim in the present case was contractual in nature and not, as contended by Allied, one "brought pursuant to" chapter 668.[4] In fact, Allied contended under its insurance policy contract that plaintiff was not a resident of her parents' household and

4. Allied relies on *Waterloo Savings Bank v. Austin*, 494 N.W.2d 715 (Iowa 1993), to support its contention that plaintiff's claim against Allied for UM coverage was brought pursuant to chapter 668 and, therefore, section 668.13 controls the interest award. Allied's reliance on *Waterloo* is misplaced. The *Waterloo* case involved a wrongful death claim brought by a plaintiff administrator against an alleged tortfeasor and the owner of a motor vehicle in which the decedents were passengers when the vehicle collided with another vehicle. *Id.* at 715. The plaintiff in *Waterloo* brought the wrongful death action for "damages arising from the death of its decedents" and, therefore, we held "the applicable provisions of chapter 668 were implicated." *Id.* at 717. The wrongful death action in *Waterloo* was not based on an alleged breach of contract, as in the present case. In fact, we distinguished the *Vasquez* case in *Waterloo* as an action arising "in the context of a coverage dispute between an insurer and its insured. . . ." *Id.* Unlike the situation involving the present plaintiff, the plaintiff administrator's wrongful death action in *Waterloo* was a common law or statutory claim, not a claim rooted in contract.

had not proved the vehicles involved in the accident were uninsured.

In *Lemrick v. Grinnell Mutual Reinsurance Co.*, 263 N.W.2d 714 (Iowa 1978), a case in which an insured filed an action against his insurer seeking UM coverage, we noted that the insured was seeking contract benefits under the policy:

> [T]o an extent the uninsured motorist clause puts the insured in a position he would occupy if the uninsured motorist had insurance and the insured sued him. Yet the insured is not in fact suing the uninsured motorist, and may never sue him. Indeed, the situation may involve a hit-and-run driver who is never identified. Actually, the insured has bought and paid for a contract by an insurer to pay him if he has the misfortune to be injured by a culpable uninsured motorist or hit-and-run driver. *If the insured and insurer cannot agree and the insured is compelled to sue the insurer under the uninsured motorist clause, we think in reality the action is bottomed on the policy.* To be sure, the circumstances of the uninsured motorist's culpability and of the insured's damages are propositions which the insured must prove in order to recover from the insurer, but these are really conditions of the insurer's contract. *The action itself appears to us to be upon the uninsured motorist clause, without which the insurer would owe nothing* irrespective of the flagrancy of the uninsured motorist's culpability and the extent of the insured's damage.

*Id.* at 716–17 (emphasis added).

We conclude plaintiff's claim was not "brought pursuant to" Iowa Code chapter 668 and, therefore, the district court's interest award pursuant to section 535.3 and the *Vasquez* case was correct.

2. *Equal protection challenge.* Allied contends, in the event we award interest pursuant to Iowa Code section 535.3 (as we have above), such a ruling would violate its equal protection rights under the Fourteenth Amendment to the United States Constitution and article I, section 6 of the Iowa Constitution. We review constitutional claims de novo. *State v. Jackson*, 542 N.W.2d 842, 844 (Iowa 1996).

Allied claims, in essence, that it is similarly situated to a defendant in an action brought pursuant to the comparative fault act, Iowa Code ch. 668, and, therefore, any interest award other than one under section 668.13 would violate its equal protection rights. We find this claim is without merit.

A litigant who defends a claim based on an alleged breach of contract is not similarly situated to a litigant who defends a tort action for damages against a party with whom it has no contractual ties. In the former situation, an insured has paid premiums to an insurer with an expectation that the insurer will honor the coverage provisions of the policy in the event the insured suffers a covered loss. If an insurer is found to have wrongfully denied coverage for a covered loss, there is good reason to award a successful insured interest from the date of commencement of the lawsuit filed in order for the insured to defend his or her rights under the contract.

In the latter situation, a plaintiff who files an action for damages against a defendant based on the alleged negligence or otherwise wrongful conduct of the defendant did not, in most cases, have a contractual relationship with the defendant prior to the time of the defendant's alleged negligence or misconduct. Therefore, a successful plaintiff had no contractual expectations from the defendant prior to the time plaintiff proves his or her case in court and a judgment is entered against the defendant.

Upon our de novo review, we find, like the district court, an interest award under Iowa Code section 535.3 in the present case does not violate Allied's equal protection rights. Allied has failed to show that similarly situated litigants are not being treated equally under Iowa Code section 535.3, and has failed to show that Iowa Code section 535.3 is patently arbitrary and bears no rational relationship to a legitimate governmental interest. *See In re Matter of Bishop*, 346 N.W.2d 500, 505 (Iowa 1984). Therefore, Allied's equal protection claim must fail.

V. *Disposition.* The district court's rulings are affirmed in part, reversed in part, and remanded.

We affirm the court's conclusion that plaintiff was a resident of the named insured's household at the time of the accident.

We reverse due to the court's error in considering plaintiff's hearsay testimony in regard to the alleged uninsured status of the motor vehicles involved in the accident. We remand the case for reconsideration of the uninsured status coverage issue under the procedure outlined in division III(B) above.

On remand, should the district court find in favor of plaintiff on the uninsured status coverage issue, we affirm the court's ruling awarding interest on the UM judgment for plaintiff pursuant to Iowa Code section 535.3.

The "all reasonable efforts" standard of proof adopted today for use in UM coverage cases applies to the present case, prospectively to cases awaiting final judgment at the time this decision is filed, and to cases in which the issue resolved herein was properly preserved. *See State v. Johnson,* 539 N.W.2d 160, 165 (Iowa 1995).

Costs on appeal are taxed one-third to plaintiff and two-thirds to defendant.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**