William R. Brennan, Jr., J.
After a hearing, petitioner’s motion for a stay of arbitration is in all respects denied.
On December 20, 1965 claimant was a passenger in a vehicle owned by one Silkworth which was insured by petitioner (the policy containing the standard New York uninsured driver indorsement) when said vehicle was struck in the rear by an automobile owned by one John Miller and operated by one Walter Jaeger.
Petitioner claims that it never received timely notice of claim under the uninsured driver indorsement, and that, in any event, the claimant has not proven that the Miller vehicle was in fact uninsured. With both contentions the court must disagree.
Petitioner received notice of the accident some four days after its occurrence, set up a file and interviewed the claimant, who informed petitioner that she was represented by an attorney and that the accident was caused by the fault of the driver of the Miller vehicle. Based upon this information it closed its file and undertook no further investigation.
In the meanwhile, claimant’s attorney contacted the Motor Vehicle Department and was informed that the Miller vehicle was insured by the Allstate Insurance Co. Notwithstanding this information, and as a precautionary measure, the attorney, on April 13, 1966, 114 days after the accident, filed with petitioner a claim under the uninsured driver indorsement. Petitioner did not reject this notice as being untimely, but reopened its file and commenced a further investigation. On May 19, 1966 petitioner too was informed by the Motor Vehicle Department that the Miller vehicle was insured by Allstate.
On July 28, 1966 claimant’s attorney was informed by the Allstate Insurance Company that its policy had been cancelled as of October 23, 1965 and that it was not in force and effect on the date of the accident. After being informed of this, petitioner checked with Allstate which confirmed the fact of the policy’s cancellation. Petitioner again contacted the Motor Vehicle Department and was informed on November 14, 1966 that the department’s prior communication had been in error and that the vehicle was in fact uninsured due to policy can *362 cellation. In the meanwhile, petitioner was informed on August 10, 1966 by Miller’s wife that the Miller vehicle had been stolen at the time of the accident.
Under the uninsured driver indorsement, the claimant was required to give written notice of claim 11 within 90 days or as soon as is practicable ’ ’ and that phrase has been interpreted as requiring notice within a reasonable time under all the circumstances. (Matter of Lloyd [MVAIC], 27 A D 2d 396.) In the case at bar, the claimant’s attorney was diligent in ascertaining the insurance status of the Miller vehicle and was in fact misinformed by the Motor Vehicle Department that it was insured. In an excess of caution, prompted perhaps by visions of disclaimer rather than cancellation, the attorney filed his notice of claim. It was not until long afterward that he first learned definitely that the vehicle was in fact uninsured. Under all the circumstances, the notice of claim was filed within a reasonable time and as soon as practicable.
Petitioner also contends that claimant has failed to prove that there was in fact no insurance applicable to the Miller vehicle or its operator. It offers no. affirmative proof of the existence of any such policy but demands that claimant offer further proof that no other policy covered the driver of the vehicle, Walter Jaeger. While some support for this reasoning can be found in Matter of Landow (MVAIC) (17 A D 2d 976), a close reading of that case reveals that it did not touch upon the precise issue here raised. The Landow case holds simply that where the driver of a vehicle owned by another is covered by a policy of liability insurance, even though there is no policy covering the vehicle itself or the owner of the vehicle, recourse must be had against the driver and/or his carrier before any claim may be asserted under the uninsured driver indorsement.
In Landow the record revealed the existence of a policy covering the driver and it does not appear whether such proof was offered by claimant or by MVAIC. Consequently, the case does not purport to decide the question of whose burden of proof it is to establish the presence or absence of such insurance or the quantum of proof necessary.
Since the absence of insurance upon the offending vehicle and its driver is a condition precedent to the applicability of the uninsured driver indorsement, we hold that the burden of proving such absence is upon the claimant. However, we must keep in mind that proving a negative is always difficult and frequently impossible and that, consequently, the quantum of proof must merely be such as will convince the trier of the facts *363 that all reasonable efforts have been made to ascertain the existence of an applicable policy and that such efforts have proven fruitless. In such an event, and absent any affirmative proof by petitioner, the inference may be drawn that there is in fact no insurance policy in force which is applicable.
In this case the claimant has offered proof that the vehicle was stolen. She has offered proof that Jaeger was intoxicated while driving the vehicle. She has offered proof that Jaeger was an 18-year-old sailor who was AWOL at the time, and, finally, that a summons was served upon him because he was driving without a license, and that he never filed a MV 104 report of accident. These facts lead the court to conclude that he was not covered by insurance at the time of the accident. To require more would be to impose an impossible burden upon an innocent victim of an automoble accident, a burden which would ultimately frustrate the entire purpose of the law. The motion is denied.