Delbert BURTON, Appellant,

v.

FARM BUREAU INSURANCE COMPANY; and United States Fire Insurance Company, Appellees.

No. 2001–SC–0573–DG.

Supreme Court of Kentucky.

Aug. 21, 2003.

Rehearing Denied Oct. 23, 2003.

Michael R. Dowling, Ashland, Garis L. Pruitt, Catlettsburg, Counsel for Appellant.

Ralph T. McDermott, Ashland, Counsel for Appellee Farm Bureau Insurance Company.

Patrick M. Hedrick, Ashland, Counsel for Appellee United States Fire Insurance Company.

E. Andre Busald, William J. Kathman, Jr., Joseph A. McGee, Busald, Funk, Zevely, PSC, Florence, Counsel for Amicus Curiae Kentucky Academy of Trial Attorneys.

Opinion of the Court by Justice COOPER.

Appellant Delbert Burton was injured when he drove his employer's Mack semi-trailer truck off of a public highway and into a ditch. He claims he did so while taking evasive action to avoid striking an unidentified red automobile that had crossed the center line of the highway and was approaching him from the opposite direction in his lane of travel. No physical contact occurred between the truck and the red automobile. The automobile left the scene of the accident and neither it nor its operator has ever been located or further identified. The accident report prepared by the Boyd County Sheriff's Department indicates that an independent eyewitness verified Appellant's version of the accident.

Appellant brought this action in the Boyd Circuit Court against Kentucky Farm Bureau Mutual Insurance Company ("Farm Bureau"),[1] his personal automobile

---

1. The Complaint improperly identified this party as "Farm Bureau Insurance Company of Kentucky" and that misnomer has been repeated through the appellate process. The Answer to the Complaint properly identifies

insurer, and United States Fire Insurance Company ("U.S.Fire"), the insurer of the Mack truck, seeking to recover under the "hit and run" provisions of the uninsured motorist (UM) endorsements of both policies. The Boyd Circuit Court granted summary judgments to both insurers based on the "physical contact" requirement contained in both "hit and run" provisions. The Court of Appeals affirmed.

The applicable provision of the Farm Bureau policy includes within the definition of an "uninsured motor vehicle":

[A] land motor vehicle or trailer of any type:

. . .

3. Which is a hit and run vehicle whose operator or owner cannot be identified and which *hits:*

    a. You or any family member;

    b. a vehicle which you or any family member are occupying; or

    c. your covered auto.

(Emphasis added.)

The applicable provision of the U.S. Fire policy includes within the definition of an "uninsured motor vehicle":

[A] land motor vehicle or trailer:

. . .

    c. That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must *hit* an insured, a covered auto or a vehicle an insured is occupying.

(Emphasis added.)

■ Appellant asserts that the "physical contact," or "hit," requirement in the respective "hit and run" provisions of the UM endorsements violates the public policy expressed in the UM statute, KRS 304.20–020, especially where, as here, there is an independent witness to verify

that the accident was caused by a "hit and run" (or, more accurately, "miss and run") vehicle.

We are not writing on a clean slate. *See Masler v. State Farm Mut. Auto. Ins. Co.,* Ky., 894 S.W.2d 633 (1995); *Belcher v. Travelers Indem. Co.,* Ky., 740 S.W.2d 952 (1987); *State Farm Mut. Auto. Ins. Co. v. Mitchell,* Ky., 553 S.W.2d 691 (1977); *Jett v. Doe,* Ky., 551 S.W.2d 221 (1977). *See also Huelsman v. National Emblem Ins. Co.,* Ky.App., 551 S.W.2d 579 (1977). In each of the cited cases, the physical contact requirement was upheld and the UM coverage was deemed unavailable. In both *Jett* and *Belcher,* the physical contact requirement was upheld even though in each case there was an eyewitness to verify that the accident was, in fact, caused by the driver of an unidentified "miss and run" vehicle that left the scene. 551 S.W.2d at 222, 740 S.W.2d at 953. In *Masler,* evidence that an unidentified semitrailer truck caused a rock to be propelled into the plaintiff's vehicle, striking and injuring him, was held insufficient to satisfy the physical contact requirement of the "hit and run" provision. 894 S.W.2d at 636.

KRS 304.20–020(1) requires, unless rejected in writing by the named insured, that every motor vehicle liability insurance policy include uninsured motorist coverage "for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of *uninsured motor vehicles* . . . ." (Emphasis added.) KRS 304.20–020(2) provides that, in addition to a vehicle that is actually uninsured, "the term 'uninsured motor vehicle' shall, *subject to the terms and conditions of such coverage* [emphasis added], be deemed to include": (1) an insured vehicle whose insurer is unable to pay the legal liability limits of its policy

this party as "Kentucky Farm Bureau Mutual Insurance Company."

because of insolvency; (2) an insured vehicle with liability limits less than those required by KRS 304.39–110 (presently $25,000 bodily injury per person, $50,000 bodily injury per accident and $10,000 property damage, or $60,000 single limits); and (3) an insured vehicle whose liability coverage has been denied by its insurer. Except for minor technical amendments, the language of this statute has remained unchanged since it was enacted in 1966 and initially compiled as KRS 304.682. 1966 Ky. Acts, ch. 55 (eff.Oct. 1, 1966).[2]

■ Thus, KRS 304.20–020(1) does not require coverage for damages caused by an "unidentified motor vehicle," *e.g.*, a "hit and run" vehicle, whose insurance status is unknown, and KRS 304.20–020(2) does not include such a vehicle within the additional definitions of an "uninsured motor vehicle." *Jett, supra*, at 222. However, the statute does recognize that individual insurers may, by contractual definitions, provide coverages and terms and conditions in addition to those required by the statute. Virtually every policy of automobile liability insurance includes within its definition of an "uninsured motor vehicle" a "hit and run" vehicle; but, like the two policies at issue here, virtually every such provision also requires "physical contact" between the "hit and run" vehicle and the insured or the insured vehicle as a condition of coverage. The purpose of the physical contact requirement is to "protect[ ] the insurer from fraudulent claims arising in cases where the insured's injuries are the result of his own negligence, without the intervention of any other vehicle, although it is alleged that the accident was caused by an unidentified vehicle which immediately fled the scene." *Id.*; see also *Belcher, supra*, at 953.

Such provisions are not *per se* against public policy.

It is our opinion that insurance companies have the right to restrict the coverage they offer beyond KRS 304.20–020 to protect themselves against such fraudulent claims.

. . .

[I]nsurance contracts are like any other contracts in that they are voluntarily entered into by the parties. Travelers had good reason to require "physical contact" in its contract with Belcher. Likewise, Belcher agreed to this limitation on his insurance coverage.

*Belcher,* at 953–54.

Appellant asserts that even if the "physical contact" requirement is not an unreasonable limitation on "hit and run" coverage, it should not be applied where, as here, there is an eyewitness to verify the insured's version of the accident. However, *Belcher* also held that an otherwise valid contractual provision does not become invalid as against public policy because of variations in the facts of particular cases.

We also note that the argument that the "physical contact" provision should be void as against public policy when witnesses are present is without merit. For a "physical contact" provision to be void as against public policy, it must be generally against the public interest. Here, Belcher encourages this court to adopt a holding that the physical contact requirement is against public policy only in certain situations. Such a case-by-case analysis would distort the law in this area. In referring to contract provisions, *Forbes v. City of Ashland,* 246 Ky. 669, 55 S.W.2d 917, 919 (1932), recognized that:

---

**2.** The statute was reenacted verbatim and recompiled as KRS 304.20–020 when the Kentucky Insurance Code was revised in 1970. 1970 Ky. Acts, ch. 301, subtitle 20, § 2.

... validity is determined by its general tendency at the time it is made, and, if this is opposed to the interests of the public, it will be held invalid, even though the intention of the parties was good and no injury to the public would result in the particular case. The test is the evil tendency of the contract and not its actual injury to the public in a particular instance. Under this logic, we hold that a contract provision is either against public policy or it is not. The "physical contact" provision in Belcher's policy, therefore, cannot be against public policy only when witnesses are available.

*Id.* at 953. We also note that to hold otherwise could subject the insurer to a fraudulent claim if the alleged eyewitness was also a party to the fraud.

Uninsured motorists coverage is a public policy mandated by statute. KRS 304.20–020 has remained virtually unchanged since 1966. It requires coverage for accidents caused by uninsured vehicles, but not by unidentified vehicles whose insurance status is unknown. The inclusion of "hit and run" vehicles within the UM coverage of a particular insurance policy is a voluntary contractual extension of the statutory definition of an "uninsured motor vehicle" that can be "subject to the terms and conditions of such coverage" per KRS 304.20–020(2). For twenty-six years, we have consistently upheld the validity of the "physical contact" limitation on "hit and run" coverage within UM endorsements. If the legislature believed that public policy required inclusion of "hit and run" coverage in UM endorsements or exclusion of the "physical contact" limitation thereon, it would have amended KRS 304.20–020 long ago to so provide.

■ Finally, we reject amicus's argument that a different result is mandated by the "doctrine of reasonable expecta-

tions." That principle applies to contractual ambiguities, *United States Fid. & Guar. Co. v. Preston,* Ky., 26 S.W.3d 145, 148–49 (2000), and pertains not to whether a premium was paid for coverage that was excluded but to the clarity of the exclusionary language. *Motorists Mut. Ins. Co. v. Glass,* Ky., 996 S.W.2d 437, 450 (1999); *Simon v. Continental Ins. Co.,* Ky., 724 S.W.2d 210, 212–13 (1986). "[T]he proper area of inquiry is what the [insureds] could reasonably expect in light of what they actually paid for ...." *Estate of Swartz v. Metropolitan Prop. & Cas. Co.,* Ky.App., 949 S.W.2d 72, 76 (1997). Certainly, Appellant could not have reasonably expected coverage for this type of accident when the UM statute does not include a "hit and run" vehicle within the definition of an uninsured motor vehicle, the contractual language of the respective insurance policies unambiguously require physical contact as a condition of coverage, and twenty-six years of reported Kentucky cases have consistently upheld the validity of that requirement. *Cf. Roy v. State Farm Mut. Auto. Ins. Co.,* 954 F.2d 392, 395–96 (6th Cir.1992).

Accordingly, the judgments of the Boyd Circuit Court and the opinion of the Court of Appeals are affirmed.

LAMBERT, C.J.; GRAVES, JOHNSTONE, and WINTERSHEIMER, JJ., concur.

STUMBO, J., dissents by separate opinion in which KELLER, J., joins.

Justice STUMBO, dissenting.

Respectfully, I must dissent. This Court has addressed the issue at bar, whether physical contact is a necessary element for recovery of uninsured benefits from a negligent but unidentified driver, on many occasions.

It has been our collective opinion that when the General Assembly enacted KRS 304.20–020, it "did not presume to write an uninsured motorist policy, but merely gave a general outline of the coverage required," recognizing that the limits and terms of such coverage would be specifically defined by reasonable terms and conditions in various insurance contracts. *State Farm Mut. Auto. Ins. Co. v. Christian,* Ky., 555 S.W.2d 571, 572 (1977).

In *Preferred Risk Mutual Insurance Company v. Oliver,* Ky., 551 S.W.2d 574, 577 (1977), we stated that, "it must be noted that the purpose of mandatory uninsured motorist coverage is to provide those who purchased liability insurance with the same protection that they would have if the uninsured motorist had carried the minimum limits of liability coverage."

This Court has repeatedly noted that uninsured motorist coverage is personal to the insured and that we must look at the insured's reasonable expectation with regard to the insurance coverage which has been bought and paid for. *See, e.g., Chaffin v. Kentucky Farm Bureau Ins. Co.,* Ky., 789 S.W.2d 754 (1990) and *Ohio Cas. Ins. Co. v. Stanfield,* Ky., 581 S.W.2d 555 (1979).

To quote from Justice Leibson's eloquent dissent in *Masler v. State Farm Mutual Automobile Insurance Company,* Ky., 894 S.W.2d 633, 637 (1995):

The uninsured motorist law provides statutory coverage for the liability of an offending uninsured motorist, permitting the insurance company to include in the policy three specified exceptions. Physical contact is *not* one of those exceptions.... The statute should be construed as including an unidentified motorist within the concept of an uninsured motorist because, when the offending motorist is unidentified, no recovery can be obtained from an insurance company providing coverage to the offending motorist.

If, as contended by Appellee Farm Bureau, this Court and the General Assembly believe the physical contact requirement exists to express the public policy of this state to prevent fraudulent claims, and the record reflects there was no evidence of fraud, Appellee has negated its reasoning for non-payment.

Appellant purchased insurance to pay for bodily injury caused by an accident arising out of the operation, maintenance or use of an uninsured motor vehicle. The definition of an uninsured motor vehicle in Appellant's policy included a hit-and-run land motor vehicle whose owner or driver remains unknown. Appellant's reasonable expectation was recovery for what he had paid for.

This case is similar to one of the first cases we reviewed involving a hit-and-run situation, *Jett v. Doe,* Ky., 551 S.W.2d 221 (1977). Like *Jett,* here the insured was injured when he tried to avoid a collision with a vehicle driven recklessly by an unidentified driver. There was no physical contact between the vehicles and the unidentified drivers in either case. As in *Jett,* Appellant argues that since the accident was witnessed and corroborated by an impartial observer, physical contact is an unreasonable restriction to recovery. I agree.

It is my opinion that the time has come to address the public's reasonable expectation to be paid for what they purchase. I am persuaded by the argument that a balancing of "clear and convincing evidence" would more adequately address the interests of society and protect the insurance industry against fraud. I see no justification for this Court's endorsement of an unwarranted and unproven "fraud" assertion as a refuge that insurance com-

panies may cower behind while issuing blanket denials in claims like the one at bar. Instead of categorically excluding recovery to an entire class of plaintiffs because of the mere possibility of fraud, we should place our faith in a jury's ability to discover fraud in cases where it actually exists. In this country, we utilize juries to decide whether capital defendants will live or die; juries are up to the task of determining whether an injured plaintiff's claim is fraudulent or genuine.

Therefore, I would reverse and remand the decision of the Court of Appeals.

KELLER, J., joins this dissent.