Lesha **ALLEN**, et al. Plaintiffs

v.

**SAFE AUTO INSURANCE COMPANY** Defendant

**No. CIV.A. 303CV660MO.**

United States District Court,
W.D. Kentucky,
Louisville Division.

Aug. 6, 2004.

Grover S. Cox, Mussler & Associates, Louisville, KY, for Plaintiffs.

Robert L. Steinmetz, W. Douglas Kemper, Frost Brown Todd, LLC, Louisville, KY, for Defendant.

## MEMORANDUM OPINION AND ORDER

MOYER, United States Magistrate Judge.

This action is before the court upon the defendant's motion for partial summary judgment (DN 8) and the plaintiffs' motion for partial summary judgment (DN 10).

### I. FACTUAL BACKGROUND

Lesha Allen, a plaintiff in this action, purchased and maintains an insurance policy (the "policy"), which includes uninsured motorist ("UM") coverage, from the defendant insurer, Safe Auto Insurance Company ("Safe Auto"). This civil action arises out of two automobile accidents and Safe Auto's refusal to provide coverage in relation to them. The first accident occurred on January 16, 2003, when an unknown and unidentified vehicle struck the automobile driven by Allen and left the scene. Dale Kepple, the other plaintiff in this case, was a passenger in Allen's vehicle. Kepple was involved in a second, later automobile accident on June 15, 2003. At the time, he was driving a vehicle covered under Allen's policy.

Plaintiffs filed UM claims with Safe Auto, which refused to pay them on the grounds that Allen's UM policy does not cover hit-and-run incidents. Kepple also claims that he is entitled to basic repara-

tion benefits ("BRB") for the second accident. Those benefits were also denied by Safe Auto. Plaintiffs initiated this civil action seeking the following: (1) a declaration that they are entitled to UM benefits under Allen's policy; (2) a declaration that Kepple is entitled to BRB coverage; and (3) a finding that Safe Auto engaged in bad faith by denying coverage in violation of the Kentucky Consumer Protection Act.

## II. ANALYSIS

Summary judgment is appropriate only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court must view all of the evidence in the light most favorable to the party opposing summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Safe Auto asks for summary judgment on the plaintiffs' UM and bad faith claims. Plaintiffs' motion seeks summary judgment declaring that Allen's insurance policy does cover hit-and-run incidents under her policy's UM provision.

### A. The Uninsured Motorist Claims

■ Kentucky law requires insurers to provide UM coverage unless the named insured specifically rejects such coverage in writing. Ky. Rev. St. Ann. ("KRS") 304.20-020(1). The term "uninsured motor vehicle" is defined in the statute as follows:

> For the purpose of this coverage the term "uninsured motor vehicle" shall, subject to the terms and conditions of such coverage, be deemed to include an insured motor vehicle where the liability insurer thereof is unable to make pay-

ment with respect to the legal liability of its insured within the limits specified therein because of insolvency; an insured motor vehicle with respect to which the amounts provided, under the bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such motor vehicle, are less than the limits described in KRS 304.39–110; and an insured motor vehicle to the extent that the amounts provided in the liability coverage applicable at the time of the accident is denied by the insurer writing the same.

KRS 304.20–020(2). Kentucky law does not require insurers to provide UM coverage for damage caused by an "unidentified motor vehicle" such as one involved in a hit-and-run incident; and, the statutory definition of "uninsured motor vehicle" does not specifically include hit-and-run vehicles. *Burton v. Farm Bureau Ins.*, 116 S.W.3d 475, 478–79 (Ky.2003) ("[Kentucky] requires coverage for accidents caused by uninsured vehicles, but not by unidentified vehicles whose insurance status is unknown.").[1] As the Kentucky Supreme Court recognized, "[i]f the legislature believed that public policy required inclusion of 'hit and run' coverage in UM endorsements . . ., it would have amended [the statute] long ago to so provide." *Id.*

Ultimately, the decision whether to cover such incidents is one which may be set forth in the contract entered into by the insurer and the insured. *Burton*, 116 S.W.3d at 478. Because Safe Auto is not statutorily required to provide UM coverage for incidents involving hit-and-run vehicles, the issue here is whether such coverage is required by the policy Allen has

---

1. *Burton* arose from a claim seeking uninsured motorist coverage from a policy where "a hit-and-run vehicle whose operator or owner cannot be identified" fell within policy's particular definition of "uninsured motor vehicle." *Burton*, 116 S.W.3d at 477.

with Safe Auto. Allen's insurance policy contains the following pertinent language: *INSURING AGREEMENT—UNINSURED MOTORIST COVERAGE* Subject to the limits of liability, if **you** pay a premium for Uninsured Motorist Coverage, **we** will pay for damages, other than punitive or exemplary damages or attorney fees, which an **insured person** is entitled to recover from the **owner** or operator of an **uninsured motor vehicle** because of **bodily injury:**

> 1. physically sustained by an **insured person;**
> 2. caused by **accident;** and
> 3. arising out of the ownership, maintenance, or use of an **uninsured motor vehicle.**

"**Uninsured motor vehicle**" means a land motor vehicle or trailer of any type:

> 1. to which no **bodily injury** liability bond or policy applies at the time of the **accident;**
> 2. to which a **bodily injury** liability bond or policy applies at the time of the **accident**, but the bonding or insuring company:
>> a. denies coverage; or
>> b. is or becomes insolvent; or
> 3. to which a **bodily injury** liability bond or policy applies at the time of the **accident**, but its limit of liability for **bodily injury** is less than the minimum limit of liability for **bodily injury** required under the Kentucky Motor Vehicle Reparations Act.[2]

It is clear that Safe Auto has narrowly tailored its coverage to include only the minimum requirements under KRS 304.20–020, and its definition of "uninsured motor vehicle" does not include motor vehicles for which insurance status cannot be determined. As set forth in Kentucky case law, this court should not presume that an unidentified driver has no insurance. *Compare Baker v. Ky. Farm Bureau Mut. Ins.*, 120 S.W.3d 713 (Ky. App.2002) (declining to assume that an unknown driver was an underinsured motorist). It is true that Allen's policy contains no reference to unidentified drivers or hit-and-run accidents. And, it is also true that the policy does list fifteen (15) other types of exclusions and does not explicitly exclude hit-and-run incidents from the definition of "uninsured motor vehicle."[3] However, as will be discussed further, the absence of such specific exclusions does not convert otherwise clear language into unclear or ambiguous language in need of further clarification or construction by this court.

Citing *United States Fid. and Guar. Co.* ["*U.S.F. & G.*"] *v. Preston*, 26 S.W.3d 145 (Ky.2000), the plaintiffs assert that the term "uninsured motor vehicle" is an ambiguous phrase which can reasonably be assumed to encompass unidentified drivers. The *Preston* case involved an automobile accident which occurred when an uninsured motorist, Clifford D. West, struck and killed Mikeal Preston, who was on the highway collecting goods which had fallen from Preston's truck. The accident occurred in Georgia, a modified comparative-fault state. Preston's widow initiated suit in Georgia where Preston was found 60% at fault. Under that state's comparative-fault scheme, Preston's estate was not entitled to any recovery from West's insurance carrier. Consequently, the Georgia case was dismissed.

---

**2.** The words in bold print are defined within the insurance policy.

**3.** Each listed exclusion relates only to *conduct* by the insured or in an insured vehicle that would cause a .coverage exclusion. There is no language relating to the uninsured motorist in the exclusions section of the policy.

Preston's insurance company, U.S.F. & G., sought declaratory relief from the Fayette Circuit Court in Kentucky with respect to its rights and duties to pay on its policy with Preston. That policy provided that it "would pay all sums the insured is *legally entitled to recover* as compensatory damages from the owner or driver of an uninsured motor vehicle." *U.S.F. & G.,* 26 S.W.3d at 147. The insurer argued that Preston could not recover under the policy because a Georgia court determined that he was not "legally entitled to" recover. The Kentucky Supreme Court rejected this argument, opining that under Kentucky's pure comparative-fault statute, Preston's estate would be entitled to recover the portion of damages not caused by Preston's own negligence. It further opined that if it were to adopt the insurer's logic, then policies written in Kentucky could be construed to mean different things in different states. "Such multiple and inconsistent results would defeat the public policy underlying Kentucky UM insurance: the compensation of people who are injured by the negligence of uninsured motorists." *Id.* at 148.

In determining the scope of coverage provided by the policy, the *Preston* court determined that the language in Preston's insurance policy—"we will pay all sums the insured is *legally entitled to recover* [from the uninsured driver]"—was ambiguous and that he was ultimately entitled to recover. The court used the "essential facts" approach to reach this conclusion, finding that the requisite essential facts had been shown and that Preston could recover from the insurer.

*Preston,* however, is not applicable here simply because the phrase disputed in this litigation, "uninsured motor vehicle," is clearly defined within the insurance policy itself. As the Kentucky Supreme Court subsequently explained, the doctrine of reasonable expectations, which is consistent with the "essential facts" approach, see *Preston,* 26 S.W.3d at 149, "applies to contractual ambiguities." *Burton,* 116 S.W.3d at 479. There are no such ambiguities here.

Kentucky does not require insurers to cover hit-and-run accidents; such coverage, if provided, is the result of an insured's negotiations with the insurer. In this case, Allen's insurance policy defines "uninsured motor vehicle," a definition that does not include hit-and-run vehicles or unidentified vehicles for which insured status cannot be determined. Because the court should not and will not confer uninsured status on the unidentified driver involved in this hit-and-run incident, *see Baker, supra,* and because the plaintiffs have not otherwise established entitlement to damages for the hit-and-run accident under Allen's UM policy, the court concludes that there are no genuine issues of material fact and that Safe Auto is entitled to judgment as a matter of law.

**B. The Bad Faith Claims**

■ To justify a claim of bad faith, the plaintiffs must prove the following three elements: (1) that Safe Auto was obligated to pay, (2) that Safe Auto lacked "a reasonable basis in law or fact for denying the claim," and (3) that Safe Auto "either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed." *Empire Fire & Marine Ins. Co. v. Simpsonville Wrecker Serv., Inc.,* 880 S.W.2d 886, 888 (Ky.App.1994) (quoting *Wittmer v. Jones,* 864 S.W.2d 885, 890 (Ky.1993)). Because the plaintiffs are not entitled to damages under the UM portion of the insurance policy, they cannot assert claims of bad faith in denying such coverage against Safe Auto.

■ Additionally, Safe Auto argues, and the plaintiffs concede, that Kepple cannot

assert a bad faith claim against Safe Auto for denying his BRB claim. Kepple is not the insured under the policy, and so he cannot make a claim under the Kentucky Consumer Protection Act, KRS 367.110, *et seq. Motorists Mut. Ins. Co. v. Glass,* 996 S.W.2d 437, 447 (Ky.1997) ("The Consumer Protection Act has no application to third-party claims.") (quoting *Anderson v. Nat'l Security Fire & Cas. Co.,* 870 S.W.2d 432 (Ky.App.1993)); *compare Stevens v. Motorists Mut. Ins.,* 759 S.W.2d 819, 820 (1988) (recognizing that a homeowner's insurance policy holder has a remedy under the Consumer Protection Act when an insurance company denies a claim out of bad faith). Furthermore, Kepple's BRB claim is brought under the Kentucky Motor Vehicle Reparations Act, KRS 304.39–010, *et seq.,* which subsumes his claim of bad faith. *Phoenix Healthcare v. Ky. Farm Bureau Mut.,* 120 S.W.3d 726 (Ky.App.2003). Accordingly, this court determines that there are no genuine issues of material fact with respect to the plaintiffs' bad faith claims and that the defendant is entitled to judgment as a matter of law.

### III. ORDER

For the reasons set forth above, **IT IS ORDERED** that the plaintiffs' motion for summary judgment (DN 10) is **DENIED.**

**IT IS FURTHER ORDERED** that Safe Auto's motion for partial summary judgment (DN 8) is **GRANTED.** Safe Auto is granted summary judgment as to the plaintiffs' claims for uninsured motorist benefits and bad faith.

Plaintiffs may proceed to trial on Count 2 of the complaint, for basic reparation benefits.

### JUDGMENT

This matter having come before the court on the defendant's motion for partial summary judgment, on the plaintiffs' motion for partial summary judgment, and the court on this date having issued a memorandum opinion and order addressing said motion,

**IT IS HEREBY ORDERED** that the defendant is entitled to **JUDGMENT as a matter of law** with respect to the plaintiffs' claims to UM benefits and with respect to the plaintiffs' bad faith claims.