**Debra DOWELL, et al., Appellants,**

v.

**SAFE AUTO INSURANCE COMPANY, Appellee.**

**No. 2005–SC–000153–DG.**

Supreme Court of Kentucky.

Dec. 21, 2006.

Kevin C. Burke, Dan E. Siebert, Siebert & Johnson PLLC, Louisville, Counsel for Appellants.

Robert L. Steinmetz, Frost Brown Todd LLC, Louisville, Counsel for Appellee.

Opinion of the Court by Chief Justice LAMBERT.

This Court granted discretionary review of the Court of Appeals decision, wherein it affirmed a grant of summary judgment in favor of Appellee, Safe Auto Insurance Co. (Safe Auto). Debra Dowell and Tamatha Hasting, Appellants, seek reversal of the Courts below. The issue is whether Safe Auto must pay pursuant to the uninsured motorist coverage of the Dowell insurance policy for damages caused by a hit and run driver.

On April 19, 2001, while driving her vehicle insured by Safe Auto, Dowell was

rear-ended by a vehicle she described as a burgundy or red Chevrolet Blazer on Preston Highway in Louisville. Hasting was a passenger in the Dowell vehicle at the time of the accident. Both Dowell and Hasting suffered injuries as a result of the collision. Dowell testified that after the collision the driver of the other vehicle briefly exited his vehicle to look at the damage caused by the wreck. Almost immediately however, the driver of the other vehicle returned to his vehicle and fled the scene of the collision before the police arrived. Neither Dowell nor Hasting had an opportunity to talk with the other driver, and they were unable to identify him. A police accident report was prepared, but the police were unable to locate the unidentified driver or his vehicle. Since the other driver could not be identified, no liability insurance was ascertainable.

As required by law, Ms. Dowell had her own automobile insurance policy. She was insured by Safe Auto and she paid the additional premium required for uninsured motorist (UM) coverage. Both Ms. Dowell and Ms. Hasting made claims for UM benefits under the Dowell policy with Safe Auto for injuries sustained in the accident. Safe Auto acknowledged that UM coverage was in effect, and also that Appellants were "insureds" under the policy since both Dowell and Hasting were "occupying" an insured vehicle. Safe Auto likewise assumed, for summary judgment purposes, the facts alleged by Appellants i.e., that the unidentified motorist caused property damage and that Appellants were injured. Appellants acknowledged that they do not know the identity of the hit and run driver, nor do they know whether he or the vehicle had liability insurance.

Safe Auto denied coverage. It contended that Dowell and Hasting could not prove, as required by Part V of the policy, that "no bodily injury liability bond or policy applie[d]" to the unidentified hit and run driver or the vehicle he was driving. It is undisputed that neither the police nor Appellants have discovered the negligent motorist's insurance coverage status because he fled the scene and remains unidentified.

Both Dowell and Hasting brought litigation against Safe Auto in the Jefferson Circuit Court. In due course Safe Auto sought a motion for summary judgment on the coverage issue. The trial court rendered an opinion and order granting Safe Auto's motion for summary judgment on May 29, 2003. In its opinion and order, the trial court held that our UM statute[1] does not require insurers to provide coverage for hit and run vehicles, and that insurers have no obligation to indemnify an insured for injuries caused by an unidentified motorist where liability insurance status cannot be determined. It also held that the Safe Auto policy did not provide UM coverage in hit and run accidents.

Appellants appealed to the Court of Appeals. In its opinion, that court affirmed the trial court's summary judgment in favor of Safe Auto. The Court of Appeals held that the trial court correctly discovered no coverage for Appellant's claims because the policy did not specifically cover accidents involving unidentified drivers, and that the UM statute does not require insurers to provide such coverage. The Court of Appeals relied on our recent decision in *Burton v. Farm Bureau Ins. Co.*[2]

---

1. KRS 304.20–020.

2. 116 S.W.3d 475 (Ky.2003) The dissenting opinion relies heavily on *Burton.* While the language quoted suggests applicability to this

case, the facts in *Burton* and this case differ substantially. In *Burton,* there was express hit-and-run coverage and the case was decided on the lack of physical contact between the

to hold that Appellants had failed to demonstrate that Safe Auto, as a matter of public policy, is required to cover hit and run accidents. Similarly, the Court of Appeals relied on a decision from the United States District Court for the Western District of Kentucky[3] and adopted that court's view that there were no material ambiguities in Safe Auto's policy language.

■■■ This case involves construction of Kentucky Statutes and a written insurance contract. In such circumstances our review is *de novo* and we have no obligation of deference to the lower courts.[4] "It is well established that construction and interpretation of a written instrument are questions of law for the court."[5] We will consider the views of the United States District Court for the Western District of Kentucky on the issue before us as instructive.[6]

Litigation over uninsured motorist coverage, and specifically the hit and run feature of it, is not new to this Court. Throughout our jurisprudence we have been called upon to address such issues many times, and interpret several different insurance policies. Our case law will be discussed and applied to this case, but we note that insurance policies are constantly evolving, and we must frequently construe

new policy language. So it is with this case. The insurance policy at issue here must be reviewed within the framework of our decisions, but with the understanding that those decisions do not address the specific language we are called upon to examine here.

■■■ Part V of the Dowell policy, Uninsured/underinsured Motorist Coverage, creates the insuring agreement:

Subject to the limits of liability, if you pay a premium for Uninsured Motorist Coverage, we will pay for damages, other than punitive or exemplary damages or attorney fees, which an insured person is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury:

1. physically sustained by an insured person

2. caused by accident; and

3. arising out of the ownership, maintenance, or use of an uninsured motor vehicle.

For purposes of this review, the case turns on whether "Uninsured Motor Vehicle," as defined in the policy, covers the other vehicle involved in the accident.[7] Said otherwise, was the hit and run vehicle an uninsured motor vehicle under the Dowell policy.

---

fleeing vehicle and the claimant. The court merely reaffirmed the requirement of physical contact between the hit-and-run vehicle and the uninsured motorist benefit claimant. Here, physical contact is not in doubt. Thus, *Burton* and other no-contact cases would appear to be of dubious authority. Moreover, the dissenting opinion has cited "ubiquitous television commercials" and a commercial website maintained by Appellee. This would seem to be an unwise practice unless the record contains evidence of the truth of such advertising. Fundamentally, advertising is self-serving. Advertised "facts" would not meet the standard required by KRE 201 "not subject to reasonable dispute."

3. *Allen v. Safe Auto Ins. Co.,* 332 F.Supp.2d 1044 (W.D.Ky.2004).

4. *Cinelli v. Ward,* 997 S.W.2d 474, 476 (Ky. App.1998).

5. *Id. citing Morganfield National Bank v. Damien Elder & Sons,* 836 S.W.2d 893 (Ky. 1992).

6. *See Allen* 332 F.Supp.2d 1044.

7. We recognize that Safe Auto conceded certain facts only for purposes of its summary judgment motion, and that whether such facts are actually disputed will have to be resolved on remand.

"Uninsured Motor Vehicle" is defined in Part V of the policy at page 21 as follows:

> Uninsured motor vehicle means a land motor vehicle or trailer of any type:
>
> 1. *to which no bodily injury liability bond or policy applies at the time of the accident;*
>
> 2. to which a bodily injury liability bond or policy applies at the time of the accident, but the bonding or insuring company;
>
>    a. denies coverage; or
>
>    b. is or becomes insolvent; or
>
> 3. to which bodily injury liability bond or policy applies at the time of the accident, but its limit of liability for bodily injury is less than the minimum limit of liability for bodily injury required under the Kentucky Motor Vehicle Reparations Act.[8]

Under Kentucky law uninsured motor vehicle coverage is mandatory, and it may not be eliminated unless rejected in writing by the insured.[9] While an "uninsured motor vehicle" is not explicitly defined in KRS 304.20–020, the phrase is given its common meaning and the statute articulates three instances where an *insured* motor vehicle is deemed *uninsured* for purposes of the statute. Notably, "KRS 304.20–020(1) does not require coverage for damages caused by an 'unidentified motor vehicle,' e.g., a 'hit and run' vehicle, whose insurance status is unknown, and KRS 304.20–020(2) does not include such a vehicle within the additional definitions of an 'uninsured motor vehicle.' "[10] Our recent case law, as well as older cases, reaffirm this proposition.[11]

However, the statute includes the phrase "subject to the terms and conditions of such coverage" to "recognize that individual insurers may, by contractual definitions, provide coverages and terms and conditions in addition to those required by the statute."[12] Most insurance policies include hit and run vehicles within the definition of uninsured motor vehicle.[13] However, as our cases illustrate, insurance companies are at liberty to define what an "uninsured motor vehicle" is, so long as they do not violate the statute. Safe Auto argues that when it defined "uninsured motor vehicle" in its policy, it purposefully and unambiguously left out "hit and run" vehicles. Whether its attempt to leave out this traditional coverage was effective is the crux of this case.

Under Part V of the Dowell policy, an uninsured vehicle is a motor vehicle "to which no bodily injury liability bond or policy applies at the time of the accident." This critical language is not included in KRS 304.20–020(2), but Safe Auto argues that it simply defines the most basic instance where UM coverage is afforded i.e., when the tortfeasor does not have liability insurance. Safe Auto contends that its policy extends UM coverage only to those situations mandated by statute. However, as the language quoted above is not in the statute, we do not accept the Safe Auto interpretation at face value. As Safe Auto chose to include that language, we must say what it means.

Appellants argue that the word "applies" is not defined by Safe Auto, and as such, the word must be given its plain and ordinary meaning. According to *Webster's*

---

**8.** Emphasis added.

**9.** KRS 304.20–020.

**10.** *Burton,* 116 S.W.3d at 478

**11.** *Id.; See also Shelter Mut. Ins. Co. v. Arnold,* 169 S.W.3d 855 (Ky.2005); *Jett v. Doe,* 551 S.W.2d 221 (Ky.1977).

**12.** *Id.*

**13.** *See id.*

*Third New International Dictionary Unabridged,* the word apply is defined as "to make use of as suitable, fitting or relevant . . . to put to use especially for some practical purpose . . . to bring into action." Appellants contend that under the plain and ordinary meaning of "applies," no liability policy was "put to use" or was brought "into action", nor could it have been, because the tortfeasor concealed himself and his motor vehicle. Similarly, no liability insurance, if any there was, of the tortfeasor was "relevant," because no insurance policy "related to the matter at hand."[14] Safe Auto chose the word "applies" for use in its policy. The meaning of that word fails to satisfy the purpose for which Safe Auto seeks to use it, or it is at best ambiguous. Practically speaking, when an unidentified negligent motorist causes bodily injury and thereafter conceals himself, no liability insurance applies.

In *Allen v. Safe Auto Ins. Co.,*[15] the United States District Court, construing identical language to that before us here, determined that Safe Auto had narrowly tailored its coverage to include only the minimum required by KRS 304.20–020. Perhaps that was the intent, but it is undeniable that Safe Auto included language not required by the statute. As such, we are unable to agree with the Allen court that the language used was unambiguous and without need of further clarification or construction.

The uncertainty associated with the word "applies" is further exacerbated by other language in the Safe Auto policy. Following the definition of "uninsured motor vehicle," Safe Auto identifies nine exclusions from coverage. The policy provides that the definition of "uninsured

motor vehicle" does not include any vehicle or equipment:

1. Owned by, or available for regular use by the insured;

2. Owned by or operated by a self-insurer under any applicable vehicle law, except a self-insurer that is or becomes insolvent;

3. Owned by any governmental unit or agency;

4. Operated on rails or crawler treads;

5. Designed mainly for use off public road, while not on public roads;

6. While used as a residence or premises;

7. Shown on the declarations page of this policy;

8. Not required to be registered as a motor vehicle; or

9. That is an underinsured motor vehicle

Thereafter, the policy identifies fifteen additional exclusions applicable to both uninsured and underinsured motorist coverage. None of those twenty-four exclusions disclose that injury inflicted by a hit and run vehicle is not covered. Safe Auto could have used an unambiguous definition of a hit and run vehicle in its exclusions section, or simply excluded "hit and run vehicle," but it did not.

The language added by Safe Auto "to which no bodily injury liability bond or policy applies at the time of the accident" is not contained within KRS 304.20–020(2). If Safe Auto wished to limit UM coverage to the statutory minimum requirement there was no need to include this uncertain language. Under these circumstances we will rely on settled rules of construction that favor the insured; "[i]t is a fundamental rule in the construction of insurance

**14.** Webster's II New College Dictionary 936 (2001).

**15.** 332 F.Supp.2d 1044.

contracts that the contract should be liberally construed and any doubts resolved in favor of the insured."[16]

■ Safe Auto argues that it is unknowable whether the tortfeasor had liability insurance because he absconded. Consequently, it contends that Appellants cannot sustain their burden of proof to establish that the tortfeasor was an uninsured motorist. Generally, plaintiffs have the burden of proving each element of their claims. As previously explained however, the use of the word "applies" in the policy makes it clear that since the tortfeasor cannot be located, his actual insurance status is not controlling. In any event "applies" should be given the meaning that most favors Appellants.[17] As a matter of law, since the hit and run driver cannot be located, no insurance policy "applied" at the time of this accident. As such, Appellants met their burden to show that there was no applicable liability insurance, and the burden shifted to Safe Auto to prove otherwise. This was the holding in *Motorists Mutual Ins. Co. v. Hunt*[18] as follows:

> Since the absence of insurance upon the offending vehicle and its driver is a condition precedent to the applicability of the uninsured driver endorsement, we hold that the burden of proving such absence is upon the claimant. However, we must keep in mind that proving a negative is always difficult and frequently impossible and that, consequently, the quantum of proof must merely be such as will convince the trier of facts that all reasonable efforts have been made to ascertain the existence of an applicable

policy and that such efforts have proven fruitless. In such an event, and absent any affirmative proof by petitioner (the insurance company), the inference may be drawn that there is in fact no insurance policy in force which is applicable.

Based on the language "to which no bodily injury liability bond or policy applies at the time of the accident," this Court concludes that an unidentified hit and run vehicle is not excluded from the UM coverage of this policy. As such, coverage is deemed applicable to Appellants.

Accordingly we reverse the summary judgment of the trial court and remand for further proceedings consistent with this opinion.

GRAVES, McANULTY, NOBLE, SCOTT, and WINTERSHEIMER, JJ., concur.

MINTON, J., dissents by separate opinion.

MINTON, Justice, dissenting.

Relying principally upon a Webster's dictionary definition to find a nonexistent ambiguity, the majority quietly buries decades of precedent that held that hit and run vehicles are covered under UM policies only if the policy itself clearly says so. Because I believe that the decision we reach today will upset the settled state of our UM jurisprudence, as well as the settled expectations of both insurers and insureds, I respectfully dissent.

Under our clear precedent, the UM statute does not mandate coverage for hit and

---

**16.** *Davis v. American States Ins. Co.*, 562 S.W.2d 653, 655 (Ky.App.1977); *see also Eyler v. Nationwide Mut. Fire Ins. Co.*, 824 S.W.2d 855, 859 (Ky.1992) (stating that "[a]ny doubt as to the coverage or terms of a policy should be resolved in favor of the insured").

**17.** *Aetna Life & Cas. Co. v. Layne*, 554 S.W.2d 407 (Ky.App.1977).

**18.** 549 S.W.2d 845, 847 (Ky.App.1977) (*quoting Merchants Mutual Ins. Co. v. Schmid*, 56 Misc.2d 360, 288 N.Y.S.2d 822 (1968)).

run vehicles.[1] Rather, UM coverage for hit and run vehicles is a matter of discretion reserved for the individual insurers.[2] An insurer may choose expressly to include UM coverage for hit and run vehicles. But the choice is strictly voluntary.

In the case before us, it is uncontested that unlike most automobile insurance policies,[3] Dowell's Safe Auto policy did not expressly provide UM coverage for hit and run vehicles. And it is inarguable that as plaintiffs, Dowell and Hasting had the burden of proving each element of their claim, including the requirement that Dowell's UM policy covered the hit and run vehicle.[4] But despite their inability to show whether the hit and run vehicle was insured, and despite the fact that the UM provision of Safe Auto's policy did not include hit and run vehicles in its UM coverage, the majority concludes that Do-well and Hasting met their burden of proving that Dowell's UM policy unambiguously affords coverage for hit and run vehicles.

The majority reasons backwards: because Dowell's UM policy does not specifically list hit and run vehicles among the exclusions from coverage, then coverage for hit and run vehicles must be included. Although the majority does not expressly state that it is doing so, its holding reverses decades of precedent that hit and run vehicles are only covered under UM policies if the policy expressly **includes**, not **excludes**, such coverage.[5] Simply put, the majority's startling assertion that "since the tortfeasor cannot be located, his actual insurance status is not controlling[,] ... [and,] [a]s a matter of law, since the hit and run driver cannot be located, no insurance policy 'applied' at the time of

1. *See, e.g., Burton v. Farm Bureau Ins. Co.,* 116 S.W.3d 475, 479 (Ky.2003) ("[un]insured motorists coverage is a public policy mandated by statute. KRS 304.20–020 has remained virtually unchanged since 1966. It requires coverage for accidents caused by uninsured vehicles, but not by unidentified vehicles whose insurance status is unknown. The inclusion of 'hit and run' vehicles within the UM coverage of a particular insurance policy is a voluntary contractual extension of the statutory definition of an 'uninsured motor vehicle' that can be 'subject to the terms and conditions of such coverage' per KRS 304.20–020(2).").

2. *Id.*

3. *Id.* at 478 ("[v]irtually every policy of automobile liability insurance includes within its definition of an 'uninsured motor vehicle' a 'hit and run' vehicle[.]").

4. *See Motorists Mutual Ins. Co. v. Hunt,* 549 S.W.2d 845, 846 (Ky.App.1977) (adopting the "majority rule ... that in an uninsured motorist case[,] the insured bears the burden of proof that the adverse driver was in fact an uninsured motorist at the time of the accident.").

5. *Burton,* 116 S.W.3d at 479; *Jett v. Doe,* 551 S.W.2d 221, 222–23 (Ky.1977) ("[a]n examination of that statute [KRS 304.20–020] reveals that although insurers are required by it to provide uninsured motorist coverage, there is no requirement that coverage against loss caused by hit and run vehicles be afforded.... The matter herein is thus a purely contractual issue between the insurer and its insured[,] which we cannot disturb. By issuing an automobile liability policy providing for uninsured motorist coverage in hit-and-run cases, even though such coverage be subject to the restriction under consideration here, the insurer is providing coverage greater than that required by KRS 304.20–020. The insurer, in affording this additional coverage, has the right to require whatever conditions precedent to such protection as it sees fit, and once such a condition is clearly expressed in the policy and agreed upon by the parties, the courts must give it full force and effect and abstain from making a new or different contract under the guise of interpretation at the instance of a disappointed party."); *Shelter Mut. Ins. Co. v. Arnold,* 169 S.W.3d 855, 856 (Ky.2005).

this accident"[6] cannot be reconciled with Kentucky precedent.[7] Indeed, it is telling that the majority does not cite any authority to support its conclusion that hit and run coverage is mandated simply because a hit and run vehicle is not specifically listed in the exclusions section of a policy. After all, Safe Auto had no reason to list hit and run vehicles as specific exclusions because, as previously mentioned, our precedent clearly held that hit and run vehicles fell within a policy's UM coverage only if the policy specifically provided that it covered hit and run vehicles.

I also believe the majority errs when it concludes that Safe Auto's use of the word "applies" in the definition of uninsured motor vehicle is so far outside the terms of KRS 304.20–020 as to require an analysis using a Webster's collegiate dictionary. On the contrary, KRS 304.20–020 itself twice refers to an "applicable" insurance policy in its definition of "uninsured motor vehicle."[8] So, rather than injecting an ambiguous, extra-statutory concept into its insurance policies, Safe Auto's use of the phrase "to which no bodily injury liability

bond or policy **applies** at the time of the accident" (emphasis added) in Dowell's policy actually tracks the language of KRS 304.20–020(2).

It is unquestioned that Safe Auto intended to provide the least coverage allowed by law, an important fact largely overlooked by the majority. Marketing minimum automobile liability insurance coverage for the cheapest premium is Safe Auto's pitch, as proclaimed in its ubiquitous television commercials, as well as their website.[9] This approach has consumer appeal. And the majority cites to nothing suggesting that either Dowell or Safe Auto intended that the premium Dowell paid would provide more insurance than the minimum needed to operate an automobile legally in Kentucky.

Safe Auto's position is supported by the specific holding in *Allen v. Safe Auto Ins. Co.*,[10] a recent opinion from the United States District Court for the Western District of Kentucky interpreting an insurance policy identical to the one purchased by Dowell. In *Allen*, the court expressly re-

---

6. Majority opinion at p. 9.

7. *See Payne v. Tennessee*, 501 U.S. 808, 848, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991) (Marshall, J., dissenting) ("[t]he real question, then, is whether today's majority has come forward with the type of extraordinary showing that this Court has historically demanded before overruling one of its precedents. In my view, the majority clearly has not made any such showing. Indeed, the striking feature of the majority's opinion is its radical assertion that it need not even try.... The overruling of one of this Court's precedents ought to be a matter of great moment and consequence.").

8. KRS 304.20–020(2) ("[f]or the purpose of this coverage[,] the term 'uninsured motor vehicle' shall, subject to the terms and conditions of such coverage, be deemed to include ... an insured motor vehicle with respect to which the amounts provided, under the bodily

injury liability bond **or insurance policy applicable at the time of the accident** with respect to any person or organization legally responsible for the use of such motor vehicle, are less than the limits described in KRS 304.39–110; and an insured motor vehicle to the extent that the amounts provided in the **liability coverage applicable at the time of the accident** is denied by the insurer writing the same.") (emphasis added).

9. *See http://www.safeauto.com/about.htm* (last visited November 22, 2006) ("[a]t Safe Auto Insurance Company, we only offer minimum coverage. Which is good news if you're on a tight budget. Because with Safe Auto, you'll be able to meet the law's requirements for a price that won't break your budget. It's this philosophy that truly sets us apart ... something we call ... Minimum Coverage for Minimum Budgets[.]®").

10. 332 F.Supp.2d 1044 (W.D.Ky.2004).

jected the conclusion reached by the majority in the case at hand, instead holding that the policy unambiguously denied UM coverage for "hit and run" vehicles because Safe Auto's clear intent was to provide only minimum coverage.[11]

Finally, I believe the majority has usurped the role of the General Assembly by announcing today that the public policy of Kentucky mandates that all hit and run drivers fall within a policy's UM coverage, unless that policy's exclusions clause explicitly mentions them. Under the majority's interpretation, coverage for hit and run vehicles is now to be presumed, contrary to our precedent in which non-coverage was presumed. As noted in *Burton*, the UM statute has been virtually unchanged for decades,[12] as has our interpretation of it—until today. So I would infer from longstanding precedent that the General Assembly did not desire to make hit and run vehicles presumptively covered by UM policies.[13] And I believe the majority errs when it wades headlong into this issue of public policy that is best left to the General Assembly.[14]

Because the majority's conclusion represents a total reversal of our previous holding that hit and run vehicles are included within a policy's UM coverage only if the policy's terms unambiguously so provide, and because the majority's construction of Dowell's UM policy grafts unintended and unnegotiated-for coverage onto a policy that was designed to provide only the bare minimum coverage required by the law (and nothing more), and because the majority's conclusion thwarts the settled intent and expectations of insurers and insureds throughout the Commonwealth, I respectfully dissent.

---

11. *Id.* at 1047 ("[i]t is clear that Safe Auto has narrowly tailored its coverage to include only the minimum requirements under KRS 304.20–020, and its definition of 'uninsured motor vehicle' does not include motor vehicles for which insurance status cannot be determined.").

12. *Burton,* 116 S.W.3d at 479.

13. *Cf. Id.* ("[f]or twenty-six years, we have consistently upheld the validity of the 'physical contact' limitation on 'hit and run' coverage within UM endorsements. If the legislature believed that public policy required inclusion of 'hit and run' coverage in UM endorsements or exclusion of the 'physical contact' limitation thereon, it would have

amended KRS 304.20–020 long ago to so provide.").

14. *See, e.g., Commonwealth ex rel. Cowan v. Wilkinson,* 828 S.W.2d 610, 614 (Ky.1992) ("[c]learly the establishment of public policy is not within the authority of the courts. Section 27 of the Kentucky Constitution provides that the powers of government be divided into three distinct units: Executive, Legislative[,] and Judicial. The establishment of public policy is granted to the legislature alone. It is beyond the power of a court to vitiate an act of the legislature on the grounds that public policy promulgated therein is contrary to what the court considers to be in the public interest.").